**NONKEN v. BEXAR COUNTY et al.**

No. 2736.

Court of Civil Appeals of Texas. Eastland.

May 27, 1949.

Rehearing Denied June 17, 1949.

M. Riley Wyatt, San Antonio, Samuel Peterson, San Antonio, for appellant.

William N. Hensley, Dist. Atty., San Antonio, John W. Goode, Jr., Asst. Dist. Atty., San Antonio, for appellees.

GRISSOM, Chief Justice.

This is a suit by Joe Nonken against Bexar County to remove cloud from his title to a 106.42 acre tract of land. The real purpose of the suit was to close a road claimed by the County across Nonken's land, which road, it was alleged, covered 1.6 acres. Nonken alleged that he bought the land in 1942; that since then it had been surrounded by a substantial fence and that Bexar County claimed an easement across his land by prescription. He alleged that said road had not been used, except with the express permission of the owners of the tract, for 20 years; that it had never been graded or improved by Bexar County nor used as a road. Nonken further alleged that if Bexar County obtained an easement over the land that it had never used such prescriptive easement; that taxes thereon had been assessed against him and paid by him and his predecessors in title before they were delinquent; that the "strip" did not connect with any road or right-of-way "but merely crosses plaintiff's land and ends abruptly in the east bank of the Medina River, which is the south boundary line of plaintiff's property, and no one uses said strip of land for the purpose of ingress or egress."

Nonken alleged that whatever right Bexar County might have acquired by prescription had been lost by abandonment, adverse possession or nonuser and that said road had been closed for more than 20 years; that it had been obstructed by huge trees and heavy brush and was impassable and could not be found on the ground and that the county was estopped from claiming such prescriptive right.

Nonken apparently intended to allege title by limitation under the five years statute of limitation. He alleged that the county's claim of a prescriptive easement had created a cloud on his title; that its use created a nuisance; that he had petitioned the county to enter an order abandoning and closing the road but his petition had been denied. Wherefore, he sought judgment removing the cloud from his title, abating the nuisance and preventing the county from interfering with his property.

Bexar County specially denied Nonken's allegation (1) that the road had been fenced for 20 years; (2) that the road had been used only with permission of the owners of the Nonken land; (3) that the road is not shown on an official map of the county; (4) that the "strip" does not connect with any road or right-of-way; and (5) that the road had been closed for 20 years. The county alleged that there exists a county road across Nonken's land, commonly known as the Leal Road but sometimes known as the Carmel Church Road. It described the road by metes and bounds. It asserted that the county's right to the road was based upon the following:

(1) Gifts and dedications of the road to the public, both express and implied, by the owners of the land.

(2) Continuous use as a public road for more than fifty years, and,

(3) Open, notorious, uninterrupted, and adverse use by the public for more than twenty-five years.

In a trial to the court, judgment was rendered for the county and Nonken has appealed.

In the judgment the court stated it was of the opinion the county "acquired the road in controversy by implied dedication and by prescription—" and had not been abandoned.

Appellant's points are (1) that the road never had any factual existence prior to the summer of 1948, and (2) that if the public ever acquired an easement for a

road across appellant's land, it was lost by appellant's adverse possession, under Art. 5509.

No findings of fact or conclusions of law are in the record. This court is required to presume the court found all facts necessary to support the judgment that are sustained by the evidence. Where there is a conflict in the evidence, or different inferences or conclusions may reasonably be drawn therefrom, we are required to resolve same in favor of the judgment. We, therefore, can only look to the testimony favorable to the appellee that tends to support the judgment.

Appellant's first contention, that the road never had factual existence before 1948, cannot be sustained. The record shows that at least a portion of the road has been used as a public road since 1878. Appellant apparently means that a road 40 feet wide had no factual existence before 1948. He states in his brief that he uses "right-of-way" to designate the 40 foot strip claimed by the county as a public road and "old road" to designate a 15 foot strip that "appears to have been traveled by the public for a considerable period of time but which appears to have fallen into disuse as a public road more than twelve years ago." As suggested by appellant, the controversy might, perhaps, be narrowed to a question as to the width of the road and its existence as a public road during the past twelve years.

As to the width of the road, appellant says it never was but 15 feet wide and appellee claims it is 40 feet wide. The record discloses that in February, 1878, the Commissioners' Court of Bexar County commissioned August Pelleton as overseer of the Carmen Church road, Second Class, "30 feet wide." This road was described in said commission as running "from the forks of the Corpus Christi Road via Seirras' Crossing of the Medina River, 'Villa de Carmen' to the Corpus Christi Road, following said road as surveyed and established by the Commissioners' Court of Bexar County, and between lines drawn on each side of said road equidistant between said road and the next adjoining public County Road."

There is also in the record another commission issued in 1877, reading as follows:

"The State of Texas
Bexar County
} In The Commissioners' Court August Term, A. D. 1877

"It is ordered by the Court, That the road ordered to be opened by the Commissioners Court, from the Medina River at Seirras' crossing to the Corpus Christi road, by the way of the Carmel Church, be included in road Precinct No. 27, and that Simeon Harris, Overseer of said road precinct No. 27, have the said Carmel Church road opened, and cut out in accordance with the lines defined by the Jury of view and adopted by the Court, as a 2d Class road, and according to law.
"I hereby certify that the above is a true and correct copy from the Minutes of said Court at said Term.
"Given under my hand and seal of said Court, this 29th day of August A. D. 1877.
"James S. Smith, Clerk"

These orders show the road continued past "Villa de Carmen" or Carmel Church, to the Corpus Christi road. The evidence shows this road crossed the river and the land now owned by Nonken and that said road and river crossing were traveled by the public until in recent years a washout rendered the river crossing unsafe. These orders, taken with further description in the record of the road in question, and evidence of its continued use for about fifty years, we think, would support a conclusion by the trial court that the road in controversy has been in actual and legal existence as a public road since about 1898.

In 1938, County Surveyor Adams surveyed the land of Lamm, appellant's predecessor in title. This survey listed the road as then being 15 varas, or approximately 41.7 feet wide from the point where it left the old Corpus Christi road, or South Flores Road, to the north and crossed the land then owned by Lamm and now owned by Nonken, and proceeded across the Medina River. Appellee introduced a photostatic copy of a page from a field book in the County Engineer's office which showed the field notes and drawings of a survey made of this road in 1913. It was

there designated as a 40 foot road. In February of 1948, Bexar County had its County Engineer make a survey of the Leal Road, and the engineer doing the surveying used said 1913 field notes as a guide in staking out the right-of-way now in question. Bowles, the engineer, testified that, using the 1913 field notes, he ran an actual survey on the ground to the river; that he saw a road there in February, 1948, and that the old road he saw on the ground stayed within the right-of-way described by said 1913 field notes until it got close to the river; that the road he saw on the ground appeared to be about 40 feet wide. He said that where the field notes called for a sharp turn to the river, the old road, as shown on the ground by use thereof, at that point varied from the field notes. He testified that he could have followed the road all the way to the Medina River without the assistance of field notes. He testified that at a point near the river, identified on a map, there was a gap, that the road continued beyond the gap, which was a very narrow place that had been washed out; that you could get by it and travel all the way to the river in an average touring car; that the road actually went around the big trees claimed by appellant to be inside the right-of-way.

Mrs. Toudouze testified that she was born in 1891; that she could remember the road for 50 years; that she knew the road as the Leal and Carmel Church Road and the place where it crossed the Medina River was known as Seirras Crossing; that she had used it daily, driving cows from her home to the river for water; that she had traveled this road to Carmel Church on foot, horseback, in a wagon and in a buggy, "time and time again;" that she had crossed the river many times; that she first used the road when she was about six years old and that she went to church over said road every Sunday until 1918. She testified that it was a "regular public road; it was a regularly traveled road; it was used by people from the other side." She testified that everybody used the road and they did not obtain permission from the owners of the Nonken land. She testified

that about eleven years before the trial someone put a fence across the road; that she went to the court house to find out why the fence was there and learned the county had not given permission for anyone to run a fence across the road and she opened the gate and left it open; that there had never been a fence there before; that she was married in the Carmel Church and lived there by the road until 1938, and it continued to be used as a public road.

L. E. Willis, who lives between the South Flores Road and the Leal Road, testified that he had been using the road in controversy since 1943; that others also used the road; that they would drive down the road to the river in an automobile; that army trucks used it during the war, while on maneuvers; that they used it for several years; that it was used by the army after the beginning of the war in 1941; that they used it without permission from anyone; that you could tell it was a regular public road by looking at it. He testified that it was a dirt and gravel road and that "you don't have any trouble seeing it."

B. J. Brown testified that appellant came to him with a petition, after appellant, in 1942, bought the land across which the road runs, and asked him to sign a petition to close the road. He testified that he began using the road in 1924 and has continued to use it ever since. That he has gone on this road down to the river and across it many times; that the road had been graded; that "they," apparently the county, took a grader and caterpiller tractor and graded the bottom. He named three county commissioners who had graded this road since 1924.

"The fact that the owner of land without objection permits the public authorities to grade, repair or otherwise improve a way over his property, in virtue of their control over public streets and highways, is cogent evidence that he intended to dedicate the way to the public." 14 Tex. Jur. 708.

He testified that in 1935 or 1937, at the request of Mr. Lamm, who then owned the land now owned by Mr. Nonken, he

went before the Commissioners' Court of Bexar County and asked permission to put a fence across the road and was instructed not to do so; that Mr. Lamm gave the county the road; that the witness had never asked permission to use it. He testified that he quit using the road about four years before the trial in 1948, because Mr. Nonken was keeping everybody out; that about a month before the trial he went down this road to where it approaches the Medina River to see if it was fenced; that appellant had fenced it but the county had come in and "cleared that fence up."

James A. Willis testified that he used the road in 1945 and 1946; that he went down the road to the Medina River in an automobile; that the road had a bad drain which caused a gulley; that the river bank caved in sometime in 1947, and the river started cutting that out and thereafter you could not go across the river in a car. He testified, in substance, that the road was in fair condition until the washout in 1947; that in 1945 and 1946 it was "not all messed up" like it appeared to be in a picture exhibited by appellant; that in the summer of 1947 he drove down this road to the Medina River in a one ton pick-up. There was other evidence of a similar nature.

■ From the evidence mentioned, we think it is apparent that appellant's first point, that the road never had factual existence before 1948, must be overruled. It is clear that it was at least a question of fact which has been determined against appellant. We sustain appellee's counter point to the effect that the road had legal and factual existence prior to 1948. The testimony referred to is also pertinent to appellant's contention that, as a matter of law, any easement acquired by the public was lost by appellant's adverse possession for five years, under Art. 5509.

The record reveals that before 1939 the road was used by the public for many purposes, but chiefly to travel from the South Flores road intersection across the Medina River to the Martinez road, and that many people used the road to go to the Carmel Church, across the river. There is evidence that since a flood in 1939, Seirras Crossing of the Medina River has been impassable for most vehicles and that the road has since then been used less than formerly. The evidence is sufficient to sustain a finding that a road was acquired by the public before 1939, and, although it has since said date been used less by the public, it has been continuously used by the public up to the time of the trial, although some people quit using it during the last few years because of Mr. Nonken's objections.

■ We do not think it is controlling that there was a variance in location, of approximately 35 feet at the widest point, of the road on the ground and the 1913 field notes, over about 180 feet of the 7,944 foot road across appellant's land. The remainder of the beaten path, or old road, fell within the right-of-way described in said field notes. Such a dirt road, due to rains and washouts along a river bottom, would ordinarily vary some from a path established many years ago. It does not follow that rights acquired by the public years ago were lost by failure of the public to travel the full width of the old road.

"* * * when a road is established by prescription, the right is not limited by the beaten path used, but may be made to include sufficient land for drainage ditches, repairs, and the convenience of the traveling public." Haby v. Hicks, Tex.Civ.App., 61 S.W.2d 871, writ ref. See also Yturria Town & Improvement Co. v. Hidalgo County et al., Tex.Civ.App., 125 S.W.2d 1092, 1094.

The record is sufficient to sustain conclusions that a public road was acquired years ago substantially where the road in controversy now lies and that it has not been abandoned.

"* * * we note the universally recognized rule that, while abandonment may be established, like any other fact, by circumstances, yet those circumstances must disclose some definite act showing an intention to abandon and terminate the right possessed by the easement owner. The material question is the intention to abandon, and that intention must be established by clear and satisfactory evidence. Mere-

non user of an easement will not extinguish it." Dallas County v. Miller, 140 Tex. 242, 166 S.W.2d 922, 924. See also 14 Tex.Jur. 733.

If such an easement can be lost by adverse possession, under Art. 5509, we deem it sufficient to say that such peaceable and adverse possession by appellant is not conclusively shown.

The judgment is affirmed.