ROBINSON WATER COMPANY et al., Appellants,

v.

Mrs. Ray SEAY, Individually and as Community Survivor of the Estate of Ray Seay, Deceased, Appellee.

No. 5526.

Court of Civil Appeals of Texas, Waco.

Dec. 16, 1976.

Everett H. O'Dowd, Waco, for appellants.

Tony E. Duty, Waco, for appellee.

HALL, Justice.

This lawsuit was initiated by the Robinson Water Company against Mr. and Mrs. Ray Seay on July 17, 1973. Thereafter, on March 21, 1975, the City of Robinson, Mr. and Mrs. S. L. King, and Mr. and Mrs. Ray Lewis joined the Robinson Water Company as plaintiffs. The plaintiffs alleged that a forty-five foot strip running along the south boundary of a 1.64-acre tract and a 0.915-acre tract owned by the Seays, and located inside the tracts, was reserved by the Seays' grantors as a roadway; that the strip is now a public roadway; and that the Seays have constructed a chain link fence (enclosing an area in front of their house) within the roadway. They prayed for a judgment declaring the alleged forty-five foot strip across both tracts to be "a public street and roadway in the City of Robinson," for an order requiring the removal of the chain link fence, and for an injunction prohibiting the Seays from interfering with

the public's use and maintenance of the alleged street. Among other defenses pleaded by the Seays was the ten-year statute of limitation (Article 5510, Vernon's Tex.Civ.St.). While the case was pending trial, Mr. Seay died. The suit was then prosecuted against Mrs. Seay, individually, and as community survivor of the estate of Ray Seay, deceased.

Trial was held without a jury in May, 1975. Judgment was rendered on November 5, 1975, that the plaintiffs take nothing, and declaring (1) "that the 45-foot perpetual easement for roadway purposes retained by Grantors, running along the south side of the [Seay 1.64-acre tract] has been extinguished by operation of the ten-year statute of limitations," and (2) "that the roadway presently being used by the public along the south boundary line of the [Seay 1.64-acre tract], and located outside the chain link fence enclosing Defendant's front yard, has been established by prescription as an easement for roadway purposes for use by the public." Nothing was said in the judgment relating to the asserted roadway in the defendant's 0.915-acre tract.

The plaintiffs are the appellants. In 28 points of error, they raise these five major contentions:

1. That there is no evidence to support the implied findings upon which the court based its holding that the portion of the reserved roadway easement within the chain link fence has been extinguished by the ten-year limitations statute.

2. That the court erred in failing to declare the area in the roadway easement east of the chain link fence to be a public road.

3. That the evidence establishes as a matter of law that all of a forty-five foot strip through both Seay tracts is a dedicated city street.

4. That the evidence establishes as a matter of law that the public has acquired all of a forty-five foot strip through both tracts as a public street by prescription.

5. That the court erred in amending its judgment after the appellants had perfected their appeal to this Court.

We sustain contention number two in part, overrule the others, affirm the judgment in part, reverse it in part, and render judgment accordingly.

▮ In their brief, the appellants refer to and rely upon only the evidence favorable to their positions. However, all of their contentions relating to the sufficiency of the proof question only the legal sufficiency of the evidence. A proper testing of complaints that the evidence is legally insufficient to support findings upon which a judgment is based, or that findings which would defeat the judgment are established as a matter of law, requires the reviewing court to consider the evidence and its inferences in the light most favorable to the factual determinations that support the judgment. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1952). Our review of the evidence is made in this fashion.

The following diagrams, while not drawn to scale and possibly not accurate in every detail, reasonably depict the problem area.

In January, 1945, J. Weldon Youngblood purchased a rectangular-shaped 10-acre tract near the east side of the community of Robinson, Texas. This tract is shown in bold, black lines in Fig. 1, above. At the time of purchase by Youngblood it was separated from the land bordering it on the south by a wire fence. That fence still stands. At that time, Youngblood also owned substantial acreage adjoining the 10-

acre tract on the east, on which he was operating chicken farms. In November, 1945, Youngblood conveyed an undivided one-half interest in the ten acres to Robert M. Hague and wife. In 1951, Youngblood drilled a water well on the tract designated "O'Dowd 0.35 Ac." in Figs. 1 and 2, above. Soon thereafter, Robert Hague and Youngblood constructed a fence with concrete posts inside the southern portion of the 10-acre tract. This fence extended from the western border of the tract to the west boundary line of what is now the Seay 1.64-acre tract. There is evidence the distance this fence was placed from the south boundary of the 10-acre tract varied from 28 to 45 feet along the length of the fence. At the west boundary of what is now the Seay 1.64-acre tract this fence joined a barbed wire fence which was constructed around the front (the south side) of the house now owned by Mrs. Seay as her residence on the 1.64-acre tract. This provided a front yard for the house. The barbed wire fence then continued easterly to and through the east line of the 10-acre tract to a point in the west line of what is now the O'Dowd 0.35-acre tract. The barbed wire fence is located about the same distance from the south line of the 10-acre tract as is the concrete post fence as this latter fence nears the west side of the Seay property. As shown on Fig. 2, this distance varies between 40 and 45 feet with the length of the fence. The front line of Mrs. Seay's chain link fence is located on the exact line where the barbed wire fence passed in front of the house.

The concrete-post fence still stands, and the barbed wire fence still exists east of the Seay garage as shown on Fig. 2. These fences were erected to provide a vehicular way for Youngblood and Hague and their employees to and from the chicken farms, and to protect the remainder of the 10-acre tract for cattle grazing. Beginning with customers of the water well in the early 1950's, the public has traveled this way without permission from anyone and created a well-defined road about twenty feet wide within it. As the road traverses the original 10-acre tract and approaches the west side of the Seay 1.64-acre tract, it is located fairly well in the center of the area between the concrete-post fence and the fence along the south line of the 10 acres. However, as it nears the Seay 1.64-acre tract from the west, the road bends to the south, passes straight in front of the Seay house and yard and garage, then bends north again and centers fairly well between the barbed wire fence east of the Seay garage and the 10-acre tract south line fence, and then continues on straight into the 0.35-acre tract. This is now and has always been the location of the road. Pictures in evidence show the road is well-traveled, well-defined, and unpaved. The county graded the road from 1959 until 1973. At one time this road joined another road at some point beyond the 0.35-acre tract, and together they formed a through road, but the other road is now closed at some point uncertain in the proof.

In January, 1961, Youngblood and Robert Hague and wife sold Mr. and Mrs. Seay the 1.64-acre tract by general warranty deed. This was the first sale out of the 10-acre tract. It was off the east end of the tract for a depth of 228 feet. The deed contained this reservation: "Grantors reserve unto themselves, their heirs or assigns, *a 45-foot perpetual easement running along the South side of the property conveyed for roadway purposes.*" (Emphasis supplied). This conveyance is recorded in volume 874, page 509, of the deed records of McLennan County, Texas.

In June, 1961, Youngblood and Mr. and Mrs. Robert Hague made the second sale from the original 10-acre tract. It was of adjoining 1.13-acre and 1.05-acre parcels off the west end of the tract to Robert G. Reimer, Jr., and wife. This conveyance did not reserve anything to the Hagues, but it provided that, "J. W. Youngblood reserves unto himself, his heirs and assigns, *a forty-five foot roadway easement running along the South line of this property where a road now exists.*" (Emphasis supplied).

No further conveyances were made off the 10-acre tract until after July, 1972.

In June, 1966, Youngblood conveyed the 0.915-acre tract adjoining the east side of the 10-acre tract (see Fig. 1) to Mr. and Mrs. Seay. The south line of this tract is an extension to the east of the south line of the 10-acre tract. The deed contained a reservation reading, "Grantor does hereby expressly reserve unto himself, his heirs and assigns, the following: . . . *(3) The existing road running along the South side of the above-described property."* (Emphasis supplied). This conveyance is recorded in volume 990, page 113, of the deed records of McLennan County, Texas. It should be noticed that, unlike the reservations in the conveyances from the 10-acre tract, this conveyance does not specify a width of the roadway excepted, but simply reserves "the existing road" along the south side of the tract.

In May, 1972, Youngblood conveyed approximately 34 acres adjoining the east side of the Seay 0.915-acre tract to Hugh C. Hague and wife, but excepted from the conveyance the 0.35-acre parcel on which the water well is located (now the O'Dowd 0.35-acre tract). The south line of this tract is an extension to the east of the south line of the 10-acre tract and the Seay 0.915-acre tract.

In July, 1972, Youngblood and Mr. and Mrs. Robert Hague executed an instrument in which they recited that they had made the conveyances listed above to the Seays (1.64 acres and 0.915 acre), the Reimers (1.13 acres and 1.05 acres), and the Hugh C. Hagues (34 acres excepting the 0.35-acre tract); that they (Youngblood and Robert Hagues) were the owners of the residue of the 10-acre tract; that in the conveyances to the Reimers and the Seays (of both the 1.64 acres and the 0.915 acre) they reserved a "forty-five foot perpetual easement running along the South side of said tracts for roadway purposes"; and in which they then "granted, sold and conveyed unto the said Hugh C. Hague . . . a non-exclusive right to use" the 45-foot easement along the south side of the 10-acre residue, the Reimer tracts, and *both* Seay tracts for roadway purposes, "as well as a non-exclu-

sive right to use for roadway purposes the road running along the South side of [the 0.35-acre tract]." *(This instrument was erroneous in its recitations in these two particulars: (1) it stated that the 1.64-acre tract was conveyed to the Seays in January, 1951, when in fact the conveyance was in January, 1961; and it recites that Youngblood reserved a 45-foot strip for roadway purposes in his conveyance of the 0.915-acre tract to the Seays, when in fact the reservation was only of "the existing road").*

In November, 1972, Youngblood conveyed the 0.35-acre tract adjoining the east side of the Seay 0.915-acre tract to E. H. O'Dowd and wife.

In December, 1972, Hugh C. Hague and wife conveyed 2.55 acres adjoining the east side of the Seay 0.915-acre tract and the north and east sides of the O'Dowd 0.35-acre tract to Jimmie E. Hanks and wife. This deed refers to a *40-foot roadway* across the 0.35-acre tract along its south line.

On December 14, 1973, Youngblood and the Robert Hagues sold 2.631 acres (adjoining the east side of the Reimer 1.05-acre tract) from the original 10 acres to Tom B. Heaton and wife. The deed of conveyance expressly "reserved unto grantors, their heirs and assigns, a non-exclusive easement for roadway purposes 45-feet in width running along the South line of the above-described property where a road presently exists."

In February 1974, Youngblood, alone, executed a quitclaim deed to the City of Robinson, Texas, of any "equity, interest, right, and title" owned by him in a "forty-five foot (45') perpetual easement running along the South side" of the Reimer 1.13-acres and 1.05-acre tracts, the Seay 1.64-acres and 0.915-acre tracts, the 0.35-acre tract, "and along the south side of the tract conveyed to Ray Lewis and wife" (which plats in evidence show is located between the Seay 1.64 acres and the Heaton 2.63 acres), but "without any type or character of warranty, either expressed or implied."

When Mr. and Mrs. Seay purchased the 1.64-acre tract in January, 1961, the house on the tract in which Mrs. Seay now resides

and the road along the south line of the tract were located exactly as they are now. Immediately after the purchase, they moved into the house. Very soon thereafter (in 1961) they replaced the barbed wire fence around the front yard of the house with a wooden picket fence. This fence was placed on the exact line of the barbed wire fence, and it completely enclosed the front yard. In 1973, Mr. and Mrs. Seay replaced the picket fence with the chain link fence now in question. Again, the chain link fence was placed on the exact line of the picket fence. It completely encloses the front yard of the house. The southwest corner of the fence is located in the west line of the 1.64-acre tract at a point 25.5 feet from the southwest corner of the tract. From that point, the fence is constructed in a northerly direction along the west line of the tract to a point (uncertain in the proof), north of the Seay house. From its southwest corner the fence crosses in front of the Seay house in an easterly direction for a distance of 69 feet along a line apparently parallel to the south line of the 1.64-acre tract to a point for the southeast corner of the fence. From that point, the fence runs in a northerly direction apparently parallel with the west line of the 1.64-acre tract, along the east side of the house to a point uncertain in the proof, but probably north of the house. The evidence shows that the chain link fence closes, but it does not show where.

Mrs. Seay testified that the 45-foot strip, if extended across the front of her house, would include her front porch as well as the front yard. She said that she and her husband always claimed the area enclosed in the picket fence, and now in the chain link fence, as their property, that they grew grass in it, planted trees in it, kept their dog in it, and used it as the front yard of their house. She said that they held it adversely to Mr. Youngblood or anyone else, and that they would have taken legal action against anyone who tried to take it or destroy their yard. She also testified that she has always recognized the public's right to use the road running along the south line of her property, and that she has no right to control the road or its use. The record shows that on occasions she has attempted to exercise control over a part of the easement in front of and just east of her garage, but there is no evidence that she has acquired or claimed any right to this part by adverse possession.

Mr. and Mrs. Robert Hague testified that they were aware that Mr. and Mrs. Seay were claiming the property inside the picket fence, and that they have always considered it the property of the Seays and not a part of the roadway easement. They also acknowledged that the road in the remainder of the easement is, and during the life of the easement has always been, a public road. Mr. Youngblood did not testify.

■ The 45-foot wide roadway across the 1.64-acre tract reserved by Youngblood and the Robert Hagues for "themselves, their heirs and assigns," in their deed to the Seays was a private easement, and remained so (with the exception of that part of it outside the Seay fence which was actually used by the public as a road) until Youngblood assigned his interest in it to the City of Robinson in February, 1974. As a private easement, it was subject to being lost by the ten-year statute of limitation. *Walton v. Harigel,* 183 S.W. 785, 787 (Tex. Civ.App.—Galveston 1916, no writ hist.). The evidence we have recited supports implied findings that Mr. and Mrs. Seay possessed and used that part of the easement inside their front yard fence adversely, openly, peaceably, and continuously against any other claimants from 1961 until 1973. These findings, in turn, support the portion of the judgment to the effect that the easement inside the chain link fence has been extinguished under the ten-year statute of limitation by Mr. and Mrs. Seay's adverse possession. See *Calfee v. Duke,* 544 S.W.2d 640 (Tex.Sup.1976). Accordingly, the appellants' first and fourth contentions, supra, are overruled.

The evidence we have recited also establishes, conclusively, that the public has acquired by prescription the right of use of most of the remainder of the easement across the 1.64-acre tract, thereby effectively extinguishing this part of the easement, and of a strip about 35 feet wide along the south line of the 0.915-acre tract. This is so because, as we have said, east of the chain link fence the traveled portion of the road is approximately twenty feet in width and, for most of its distance, is reasonably centered between the barbed wire fence and the south boundary of the tracts; and it is the rule that where a road is established by prescription, the right is not limited by the beaten path used, but includes sufficient land, where reasonably available, for drainage ditches, repairs, and the convenience of the traveling public. *Nonken v. Bexar County,* 221 S.W.2d 370, 374, (Tex.Civ.App. —Eastland 1949, writ ref. n. r. e.); *Haby v. Hicks,* 61 S.W.2d 871 (Tex.Civ.App.—San Antonio 1933, writ dism.). An additional five feet for these purposes along the north side of the existing road, plus the area between the existing road and the south boundary of the Seay tracts, is not unreasonable, here, making the roadway easement for the "existing road" across the 0.915-acre tract 35 feet wide. This easement for a public roadway was fully ripened prior to Youngblood's attempted reservation in his conveyance of the 0.915-acre tract to the Seays in 1966, and prior to his quitclaim grant to the City of Robinson in 1974 of his interest in the 45-foot roadway easement across the 1.64-acre tract. Coupled with the grant, it gives the public an easement for roadway purposes in all of the 45-foot strip outside the chain link fence and in all of the 35-foot strip across the 0.915-acre tract. The trial court should have declared this area to be a public road. To this extent, the appellants' second contention is sustained.

The appellants' third contention, that the evidence conclusively shows that all of the forty-five foot strip along the *south line* of both Seay tracts is a dedicated street, is based upon theories that there has been a selling of tracts over the years with reference to the easement as a public roadway, and that the City of Robinson accepted the easement as a street before the Seays ripened any limitation rights. Our consideration of this contention convinces us that it is without merit. The evidence we have recited defeats the theory of an implied dedication by sales of tracts prior to 1972. Both Seay tracts are now in the limits of the City of Robinson, but the evidence is uncertain as to the date of the annexation. Minutes of meetings of the city council of the City of Robinson in January and February, 1973, show that the council was concerned because the strip was not a dedicated street. There is other evidence which also defeats this contention. It is overruled.

The court originally rendered judgment in this case, and signed it and filed it, on October 20, 1975. Thereafter, on November 5th, the court signed and filed an amended judgment replacing the original judgment. Meanwhile, the appellants had perfected an appeal from the original judgment. They say that because of the perfected appeal the trial court was without jurisdiction to amend the judgment. We disagree. The trial court had plenary power to amend the judgment until the expiration of 30 days after its rendition, regardless of the fact an appeal had been perfected. Rule 329b, Vernon's Tex.Rules Civ. Proc.; *First State Bank And Trust Company Of Port Lavaca v. Vector Corp.,* 427 S.W.2d 958, 959, (Tex.Civ.App.—Waco 1968, writ ref. n. r. e.).

The record fails to show whether the Robinson Water Company is a public or private corporation, and it fails to show how this party is related to this lawsuit. Accordingly the take-nothing judgment against the Robinson Water Company is affirmed.

Inferentially, the record shows that the appellants Kings and Lewises own property in the City of Robinson in the vicinity of the Seay tracts. And, as we have said, the Seay tracts are now in the City of Robinson. The take-nothing judgment against these

appellants and the City of Robinson is reversed.

The part of the judgment declaring the private 45-foot roadway easement reserved by Youngblood and the Robert Hagues across the Seay 1.64-acre tract extinguished is affirmed. Judgment is rendered in favor of the appellants City of Robinson, Kings and Lewises, declaring the portion of this 45-foot easement across the 1.64-acre tract located outside of the Seay chain link fence to be a public street in the City of Robinson. Additionally, judgment is rendered in favor of these appellants declaring the private roadway easement reserved by Youngblood across the Seay 0.915-acre tract has been extinguished, and declaring the south 35 feet across this tract to be a public street in the City of Robinson.

The trial court's assessment of the costs of the trial is affirmed. The costs of this appeal are assessed one-half against all of the appellants and one-half against the appellee.