**G.A. JAMAIL, Appellant,**

v.

**GENE NAUMANN REAL ESTATE, et al., Appellees.**

**No. 14155.**

Court of Appeals of Texas, Austin.

Oct. 31, 1984.

Rehearing Denied Dec. 5, 1984.

---

James H. Pearl, Casseb, Strong & Pearl, San Antonio; Alvin Nored, Burnet, for appellant.

Richard D. Mock, Evans, Mock & Webb, Burnet, for appellees.

Before SHANNON, EARL W. SMITH and BRADY, JJ.

SHANNON, Justice.

Appellant G.A. Jamail filed a declaratory judgment suit against appellee Gene Naumann Real Estate and others for a declaration of his rights in and to a tract of land known as "The Cove" situated in Burnet County. The land in question is situated between the 1020' contour line and the waters of Lake Buchanan. Appellees are owners of tracts "upland" from the 1020' contour line and claim a right of ingress and egress across the land below the 1020' contour ("The Cove,") to the waters of Lake Buchanan. The district court determined by judgment, among other things, that appellees were entitled to the right of ingress and egress across the land in question, to and from the waters of the lake free from interference by Jamail. This Court will affirm the judgment.

In 1930 Cassie A. Friedsam owned a large ranch in western Burnet County, and in that year Cassie, by deed, granted to the predecessor of the Lower Colorado River Authority (LCRA) a perpetual easement and right to overflow and inundate her land lying along the Colorado River below the 1020′ contour line in connection with the operation of a dam. It should be observed that Cassie Friedsam retained fee title to the land below the 1020′ contour. The waters backed up from that dam form what is now known as Lake Buchanan.

Upon Cassie Friedsam's death, one of her children, Linda Lou Friedsam, succeeded to that part of the ranch adjacent to Lake Buchanan. The partition deed expressly conveyed to Linda Lou all easements, reversions, uses and all other right, title and interest in and to all lands covered by Lake Buchanan in accordance with her mother's deed to LCRA's predecessor.

In 1947, Linda Lou conveyed a 386-acre tract of the ranch situated adjacent to Lake Buchanan to E.J. Ulhricht and V.S. Heckman. This tract was set out by metes and bounds and called for the 1020′ contour line as the boundary of that part of the land lying along the shore of Lake Buchanan. This tract lay "upland" from the 1020′ contour line. In 1948, Linda Lou conveyed the land below the 1020′ contour line, a part of which is now known as "The Cove," to L.B. Dorbandt.

A few months after Linda Lou conveyed the 386-acre tract to Ulbricht and Heckman she filed suit in the district court of Burnet County seeking to set aside the provisions in her original deed to Ulbricht and Heckman conveying the 386 acres whereby a perpetual easement was granted across the remaining portion of her ranch for ingress and egress to the 386 acres conveyed. This lawsuit was numbered 3783, and was terminated by rendition of an agreed judgment whereby, among other things, Linda Lou gave full recognition to the right of Ulbricht and Heckman to use Lake Buchanan as a means of ingress and egress to their land conveyed to them by their purchase deed.

In 1956 Ulbricht and Heckman filed suit in the district court of Burnet County against Linda Lou and her lessee seeking to recover title to land below the 1020′ contour line (a part of which is now known as "The Cove") and also seeking a declaration from the district court recognizing their right of ingress and egress across the land below the 1020′ contour line to their land from the waters of Lake Buchanan as well as the right to use their alleged "lake front" property, the land below the 1020′ contour line, for such uses as were owned, claimed and enjoyed by Linda Lou prior to her conveyance to Ulbricht and Heckman. L.B. Dorbandt, the record owner of the land below the 1020′ contour line, was not joined as a party in this suit.

On appeal, the Supreme Court of Texas held that Ulbricht and Heckman did not possess fee title to the land below the 1020′ contour line. The Court held further, among other things, that Ulbricht and Heckman held a "quasi-easement" for use and enjoyment of the land below the 1020′ contour line limited to the extent that the same would be reasonably necessary for the use and enjoyment of the land as lakefront property and that Ulbricht and Heckman had a "quasi-easement" for ingress and egress to their property from Lake Buchanan. *Ulbricht v. Friedsam,* 159 Tex. 607, 325 S.W.2d 669 (1959).

Appellees are the successors-in-title to Ulbricht and Heckman, while appellant Jamail is successor-in-title to L.B. Dorbandt.

Appellant Jamail filed the instant suit as a declaratory judgment action seeking a judicial declaration as to the respective rights of the parties to the part of the land below the 1020′ contour line commonly known as "The Cove." Jamail contended, among other things, that the district court should declare that (1) he held title to the land below the 1020′ contour line known as "The Cove"; (2) that he is entitled to control the surface of the land below the 1020′ contour line known as "The Cove"; (3) that the land below the 1020′ contour line known as "The Cove" is not subject to any easement for the benefit of appellees, the

successors-in-title to Ulbricht and Heckman; and (4) that he held title by limitations to the land below the 1020′ contour line known as "The Cove."

In response, appellees filed a cross-action seeking a declaration that they have the right of egress from their lands across lands of "The Cove" to the waters of Lake Buchanan without interference from Jamail, and the right of egress to their lands from the waters of Lake Buchanan without such interference. Appellees further sought a declaration that they possessed the rights set out by the Supreme Court in *Ulbricht v. Friedsam, supra.*

After a bench trial, the district court rendered judgment denying all relief to Jamail. The judgment further declared that appellees were entitled to the right of ingress and egress to their lands from the waters of Lake Buchanan, and the right of egress from such lands to the waters of Lake Buchanan at all times without interference, obstruction, or impediment by Jamail. The district court declared further that appellees for such purposes of ingress and egress have the right to go upon, use and "tranverse" the land below the 1020′ contour line and that appellees own the rights and privileges reserved by Cassie A. Friedsam as grantor in her deed to the predecessor LCRA.

The judgment further confirmed the rights, easements, and privileges as were recognized by the Supreme Court in *Ulbricht v. Friedsam, supra.*

Upon request, the district court filed findings of fact and conclusions of law. The dispositive findings were, *inter alia,* that no "good and substantial" fence enclosed "The Cove" for a period in excess of the several limitation periods and that the construction of the fence along the 1020′ contour line adjacent to "The Cove" was a convenience for the benefit of both Jamail's and appellees' predecessors-in-title and was not adverse to appellees or their predecessors-in-title. Further, the court found that Jamail and his predecessors-in-title had not made adverse use of "The Cove" for the

required periods of time under the several limitations statutes.

The district court concluded, among other things, that Jamail took his deed to "The Cove" subject to the rights afforded appellees and their predecessors-in-title by the Supreme Court in *Ulbricht v. Friedsam, supra.* The court concluded further that Jamail had not obtained, through adverse use, the rights of appellees afforded them by the opinion of the Supreme Court in *Ulbricht v. Friedsam, supra.*

Jamail assails the judgment by many points of error, a major contention being that the district court erred in concluding that the Supreme Court in *Ulbricht v. Friedsam,* 159 Tex. 607, 325 S.W.2d 669 (1959) recognized any right or easement for the benefit of appellees in "The Cove." Jamail argues further that the district court erred in concluding that he took his deed to "The Cove" subject to the right afforded appellees by *Ulbricht v. Friedsam, supra.* Jamail points out that his predecessor-in-title, L.B. Dorbandt, was not a party to the suit. Jamail's contention requires, of course, an examination of the Supreme Court's opinion in *Ulbricht v. Friedsam, supra.*

By his suit in 1956 Ulbricht endeavored to establish title to the lands below the 1020′ contour line and, alternatively, to obtain a declaration that he and his partner held implied easement rights of ingress and egress over such lands below the 1020′ contour line. The Supreme Court disposed of the first contention holding that Ulbricht and his partner did not hold title to the lands below the 1020′ contour line. The Court in its opinion identifies the following as the "correct rule of law" governing the question whether Ulbricht possessed the right of ingress and egress over Friedsam's lands below the 1020′ contour line:

> Where the owner of an entire tract of land or of two or more adjoining parcels employs a part thereof so that one derives from the other a benefit or advantage of a continuous, permanent, and apparent nature, and sells the one in favor of which such quasi easement ex-

ists, such easement, being necessary to the reasonable enjoyment of the property granted, will pass to the grantee by implication.

The Supreme Court also quoted with approval language from *Mitchell v. Castellaw*, 151 Tex. 56, 246 S.W.2d 163 (Tex. 1952):

It is universally recognized that where the owner of a single area of land conveys away part of it, the circumstances attending the conveyance may themselves, without aid of language in the deed, and indeed sometimes in spite of such language, cause an easement to arise as between the two parcels thus created—not only in favor of the parcel granted ("implied grant") but also in favor of the one remaining in the ownership of the grantor ("implied reservation"). The basis of the doctrine is that the law reads into the instrument that which the circumstances show both grantor and grantee must have intended, had they given the obvious facts of the transaction proper consideration.

 * * * * * *

The easement referred to in *Ulbricht* has been described as an implied easement appurtenant, *Drye v. Eagle Rock Ranch, Inc.*, 364 S.W.2d 196 (Tex.1962), or as an easement by necessity. *Capitol Rod & Gun Club v. Lower Colorado River Authority*, 622 S.W.2d 887 (Tex.Civ.App.1981, writ ref'd n.r.e.); *Wall v. Lower Colorado River Authority*, 536 S.W.2d 688 (Tex.Civ. App.1976, writ ref'd n.r.e.).

This Court has examined *Ulbricht v. Friedsam, supra* and has concluded again that the controlling holding is that, under the circumstances, Ulbricht and Heckman possessed an easement by necessity to cross over the lands below the 1020' contour line. *Capitol Rod & Gun Club v. Lower Colorado River Authority, supra; Wall v. Lower Colorado River Authority, supra.*

In any event, and however labeled, the easement recognized by the Supreme Court permitted Ulbricht the right to use and enjoy:

the surface land below the 1,020 contour line limited to the extent that the same may be reasonably necessary to the use and enjoyment of the land as lake front property, subject to the rights of the L.C.R.A. We further hold that [Ulbricht and Heckman] have the right to pasture their cattle on the land below the 1,020 foot contour line in front of their 386 acres, down to the water's edge; and that [Ulbricht and Heckman] have ingress and egress to their property from Lake Buchanan.

Because appellees are successors-in-title to the lands of Ulbricht and Heckman, they possess the same rights and privileges in and to the land below the 1020' contour line as specified by the Supreme Court in its opinion.

 Contrary to Jamail's suggestion, the district court's judgment is not in conflict with *Capitol Rod & Gun Club v. Lower Colorado River Authority, supra,* and *Wall v. Lower Colorado River Authority, supra.* *Capitol Rod & Gun Club* and *Wall,* unlike *Ulbricht v. Friedsam, supra,* involved the construction of *express* easements. This Court affirms the district court's judgment upon the holding and conclusion that appellees held an implied easement of ingress and egress across the lands below the 1020' contour line as set out in *Ulbricht v. Friedsam, supra.*

 Jamail's other major contention asserted by several points of error is that, as a matter of law, he and his predecessor-in-title extinguished by adverse possession any easement which appellees and their predecessors-in-title may have had in and to the lands situated in "The Cove." Alternatively, Jamail claims that the great weight and preponderance of the evidence required that the district court conclude that he and his predecessors-in-title had extinguished any easement rights in and to the lands in "The Cove" possessed by appellees and their predecessors-in-title. In considering Jamail's "no evidence" (as a matter of law) point, this Court must reject all evidence contrary to the findings and consider only

the facts and circumstances which tend to support those findings. *Renfro Drug Co. v. Lewis,* 149 Tex. 507, 235 S.W.2d 609 (1950). In reviewing factual sufficiency points of error, this Court considers all of the evidence to determine whether the findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

Jamail had the burden of proving the elements of adverse possession, including "a claim of right." *Orsborn v. Deep Rock Oil Corp.,* 153 Tex. 281, 267 S.W.2d 781 (Tex.1954). A claim of right must be manifested by declaration or by open or visible act. If there is no verbal assertion of claim to the land brought to the knowledge of the holder of title, the adverse possession must be so open and notorious and manifested by such an open visible act or acts that knowledge on the part of the title holder will be presumed. *Orsborn v. Deep Rock Oil Corp., supra.*

Jamail's limitations claim is dependent upon L.B. Dorbandt's use and possession of the land in "The Cove." L.B. Dorbandt's deposition testimony was that in 1948 he built a fence along the 1020' contour line which separated "The Cove" from the lands now owned by appellees. Dorbandt grazed cattle in "The Cove" and he testified that the purpose of the fence was to separate "The Cove" from the upland and to prevent his livestock from passing from his property in "The Cove" onto the uplands. The fence also served to keep the upland cattle from passing onto the lands of "The Cove." Dorbandt's fence did not enclose "The Cove" because it was constructed on only one side of "The Cove." There was evidence that the fence began to deteriorate in the later years as no one was regularly repairing it. Once the lake area began to build up, appellees or their predecessors-in-title began to exercise their rights by using "The Cove" area to gain access to the lake for fishing and swimming.

Dorbandt testified on deposition that he paid ad valorem taxes on the land in "The Cove" area. He was also allowed to testify that he exercised "dominion and control" over the land in "The Cove."

The adverse claimant who relies upon grazing only as evidence of his adverse use and enjoyment must show as a part of his case that the land in dispute was designedly enclosed. *McDonald v. Weinacht,* 465 S.W.2d 136 (Tex.1971). Dorbandt built the fence to prevent his cattle from straying onto the uplands, and at the same time to keep the upland cattle from coming down onto the lands of "The Cove." The proof fails to show not only that "The Cove" was "designedly" enclosed, but also fails to show that the land in "The Cove" was even enclosed. By far the greater part of the boundary of "The Cove" consisted of the shores of Lake Buchanan and there was nothing to indicate that such shores were relied upon or used to enclose the land and keep out any person desiring access to the lands in "The Cove." *Vineyard v. Brundrett,* 42 S.W. 232 (Tex.Civ. App.1897).

The judgment of the district court is affirmed.

EARL W. SMITH, J., not participating.