

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-12-00841-CV

**SCHUHARDT CONSULTING PROFIT SHARING PLAN**, Allan P. Bloxsom, III,
Thomas O. Stoner, Stormy Night, LLC and TOS Ranch, LLC,
Appellants

v.

**DOUBLE KNOBS MOUNTAIN RANCH, INC.** and Carlton E. Thompson,
Appellees

From the 38th Judicial District Court, Uvalde County, Texas
Trial Court No. 2011-09-28311-CV
Honorable Mickey R. Pennington, Judge Presiding

Opinion by:     Catherine Stone, Chief Justice

Sitting:        Catherine Stone, Chief Justice
                Marialyn Barnard, Justice
                Patricia O. Alvarez, Justice

Delivered and Filed:  January 22, 2014

AFFIRMED

This appeal arises from a lawsuit in which the appellants alleged adverse possession of an easement across their property. The easement was previously expressly granted by their predecessor-in-interest to the predecessor-in-interest of Double Knobs Mountain Ranch, Inc. The appellants claimed they had adversely possessed the easement, but after a bench trial, the trial court disagreed and entered judgment in favor of the appellees. On appeal, the appellants contend the express easement violates the statute of frauds because it cannot be located with reasonable certainty, and the appellees waived their claim of easement by necessity. Alternatively, the

appellants contend the evidence conclusively established their claim of adverse possession as a matter of law, and they were not estopped from denying the existence of the easement based on references to the easement in subsequent deeds signed by the appellants. We affirm the trial court's judgment.

## BACKGROUND

In 1979, Royal Stoner conveyed an 800-acre and a 25-acre tract of land to David Llenos. The deed granted an express easement for ingress and egress with regard to both tracts of land. The western boundary of the 800-acre tract is the eastern boundary of the land Royal continued to own, which is commonly referred to as the Stoner Ranch.

A few months after the conveyance, Royal erected a low fence along the eastern boundary of the Stoner Ranch to keep his goats and sheep on his property. In 1993, Royal conveyed the ranch to his three children. Construction of a high fence to replace the low fence began in 1996, and was completed by the fall of 2000. The high fence was erected to keep deer on the Stoner Ranch for hunting operations. In 2006, the ranch was partitioned among the children in order to enable a portion of the ranch to be conveyed to a third party, Allan P. Bloxsom, III. The 2006 partition deeds referenced the 1979 easement.

The 800-acre tract of land was purchased in 2010 by Double Knobs Mountain Ranch, Inc. In the summer of 2011, one of the owners of Double Knobs approached Gil Stoner, one of Royal's children, about the easement. The parties' dispute over Double Knobs's easement rights was the basis for the underlying lawsuit. As previously noted, the trial court held Double Knobs retained its easement rights.

## LOCATION OF THE EASEMENT

The appellants initially contend that the express easement fails because the easement cannot be located with reasonable certainty. Both the appellants and the appellees called a

professional land surveyor to testify at trial. The appellees' expert stated that the easement could be located with reasonable certainty, while the appellants' expert stated that it could not.

"An express easement is an interest in land to which the Statute of Frauds applies." *West Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248, 264 (Tex. App.—Austin 2002, no pet.). "If an easement does not sufficiently describe the interest conveyed, the conveyance is void." *Id.* "'To be sufficient, the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the land to be conveyed may be identified with reasonable certainty.'" *Id.* (quoting *Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex. 1972)).

Even if an easement is uncertain, however, a court is not authorized "to completely ignore the right granted, if the easement is susceptible to a reasonable construction as to its true intent and meaning." *Id.*; *see also Hubert v. Davis*, 170 S.W.3d 706, 711 (Tex. App.—Tyler 2005, no pet.) ("the fact that an easement clause is vague, indefinite, or uncertain does not authorize the court to completely ignore the valuable right thereby granted if the clause is still susceptible of a reasonable construction as to its true intent and meaning"). "If enough appears in the description so that a person familiar with the area can locate the premises with reasonable certainty, it is sufficient to satisfy the Statute of Frauds." *Vinson v. Brown*, 80 S.W.3d 221, 227 (Tex. App.—Austin 2002, no pet.). "There should be sufficient certainty that a surveyor may locate the easement from the description." *West Beach Marina, Ltd.*, 94 S.W.3d at 266. Moreover, with express easements, "an exact designation of location is unnecessary, as long as the tract of land that will be burdened by the easement is sufficiently identified," and inaction in failing to mark and establish the boundaries of an easement at the time the grant is made "does not cause the grant to fail." *Vinson*, 80 S.W.3d at 227.

Immediately after the 1979 deed described the 800-acre tract being conveyed, the deed stated:

TOGETHER with a non-exclusive Easement for the purposes of ingress and egress 20 feet in width in favor of [the 800-acre tract] above described, described as follows, to-wit:

BEGINNING at a point to be selected by grantee herein on the West line of [the 800-acre tract] above described;

THENCE in a Westerly direction across a 252.354 acre tract belonging to Grantors lying immediately adjacent to such West line of the West side of [the 800-acre tract] to the existing ranch road belonging to Grantors, which ranch road begins at the concrete water storage reservoir located on the west line of said 252.354 acre tract;

THENCE following the centerline of said existing ranch road leading from said concrete water storage reservoir westerly across the Royal Stoner Ranch to a point where such ranch road leaves said Royal Stoner Ranch and joins the County-maintained road leading westerly to State Highway No. 55.

The record is undisputed that the 1979 deed sufficiently identified the Stoner Ranch as the tract of land burdened by the easement. In addition, Paul Carey, the professional land surveyor retained by the appellees, testified that the easement could be located with reasonable certainty. With regard to the starting point, the testimony and photographic exhibits established that a gap gate[1] existed in the low fence initially built by Royal Stoner, which the trial court found marked the point at which the easement began. In his testimony, Carey noted that the language granting the easement identified a water tank and existing ranch road, which could readily be identified using a USGS topographic map prepared from 1974 aerial photographs. Moreover, the evidence established that the same ranch road is referenced in the easement granted with regard to the 25-acre tract conveyed in the same deed, and the appellants do not dispute the validity of that easement. Carey then used a 1995 aerial photograph taken from Google Earth to locate the road from the water tank to the gap gate located on the western boundary of Double Knobs ranch. Photographs also were admitted into evidence showing that the road continued to the top of a ridge after crossing the boundary onto the Double Knobs ranch. Finally, Carey used aerial photographs

---

[1] A "gap gate" is a wire gap installed in a portion of a fence as a means of ingress and egress which is "kept in a closed position by means of wire hoops at the top and bottom of a fence post, which [are] looped over the top and under the bottom of a post that [is] attached to the free end of the gap." *Keyser v. Lackey*, 523 S.W.2d 295, 296 (Tex. Civ. App.—Corpus Christi 1975, no writ).

taken in 2011, after the commencement of the litigation, to further demonstrate the location of the road. Because the testimony and photographic evidence establish that a person familiar with the area could locate the easement with reasonable certainty, we overrule appellants' argument that the easement violates the Statute of Frauds and is void.[2] *See West Beach Marina, Ltd.*, 94 S.W.3d at 266 (holding description sufficient to locate easement with reasonable certainty where evidence included affidavit testimony of surveyor concluding description was sufficient even though evidence also included affidavit testimony of second surveyor with opposite opinion).

### ADVERSE POSSESSION

Appellants next rely on the 10-year adverse possession statute to assert ownership of the easement. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.026 (West 2002). "Adverse possession" is statutorily defined as "an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." *Id*. at § 16.021(1).

### A. *Burden of Proof and Standard of Review*

The appellants, as the parties seeking to establish title by adverse possession, had "the burden of proving every fact essential to that claim by a preponderance of the evidence." *Rhodes v. Cahill*, 802 S.W.2d 643, 645 (Tex. 1990). "[T]he question of adverse possession normally is a question of fact, so only in rare instances is a court justified in holding that adverse possession has been established as a matter of law." *Id*. at 646 (internal citations omitted). In order to establish adverse possession as a matter of law, the appellants were required to conclusively establish each of the following elements of the definition of adverse possession: (1) actual and visible appropriation of real property; (2) commenced and continued under a claim of right that is; (3)

---

[2] Because we hold the express easement is not void, we need not address the issue of whether an easement by necessity would be implied in the absence of the express easement.

inconsistent with and hostile to the claim of another. *Bywaters v. Gannon*, 686 S.W.2d 593, 595 (Tex. 1985); *Turner v. Mullins*, 162 S.W.2d 356, 367 (Tex. App.—Fort Worth 2005, no pet.); TEX. CIV. PRAC. & REM. CODE ANN. § 16.021(1). Under this standard of review, no inferences are indulged in appellants' favor. *Turner*, 162 S.W.3d at 367.

B.      *Designed Enclosure*

Appellants first argue that a "designed enclosure" is "one kind of adverse possession" and that "no reasonable finder of fact could conclude either fence was not a designed enclosure."

The Texas Supreme Court has described the law on designed enclosure as follows:

> It is settled that limitation title cannot be acquired by grazing unenclosed land. And it is of course true that title cannot be acquired merely by fencing land without grazing it or farming it or putting it to other use. When the use relied upon to support the statute is grazing, there must be also at the same time sufficient enclosure, such as to give evidence that the land was designedly enclosed and to show the assertion of claim hostile to the true owner. The ordinary case for the acquisition of title by adverse possession, when the use is grazing, is one in which the person claiming title under the statute has built a fence or fences enclosing the land and has maintained the enclosure and continuously used the land for grazing during the statutory period. Such construction of fences and use of the land for grazing afford evidence of hostile claim.

*Orsborn v. Deep Rock Oil Corp.*, 267 S.W.3d 781, 785 (Tex. 1954) (internal citations omitted).

Having reviewed the cases discussing the nature of the "grazing" necessary to establish adverse possession by a designed enclosure, we conclude appellants in the instant case were not engaged in "grazing" as that term is used in this area of the law. While intentionally enclosing land that a person does not own and placing livestock on that land to continuously graze it would "afford evidence of [a] hostile claim," *id.*, a person enclosing land he owns to keep deer on that land is more akin to simply fencing land, which the Texas Supreme Court stated would not

establish adverse possession "without grazing it or farming it or putting it to other use."[3]  *Id*.; *see also Anderson v. Shaw*, No. 03-08-00352-CV, 2010 WL 2428132, at \*10 (Tex. App.—Austin June 18, 2010, no pet.) (referring to grazing of livestock) (mem. op.); *Heirs of Simmons v. Bouligny*, No. 13-09-00269-CV, 2010 WL 1619069, at \*5 (Tex. App.—Corpus Christi Apr. 22, 2010, no pet.) (same) (mem. op.).  Moreover, the testimony established that the high fence did not enclose the entire Stoner Ranch because it did not encompass "the river pastures."[4]

In *Jamail v. Gene Naumann Real Estate*, 680 S.W.2d 621 (Tex. App.—Austin 1984, writ ref'd n.r.e.), the Austin court addressed a situation involving similar facts.  In *Jamail*, the land in question was "situated between the 1020' contour line and the waters of Lake Buchanan."  680 S.W.2d at 622.  The appellees were "owners of tracts 'upland' from the 1020' contour line and claim[ed] a right of ingress and egress across the land below the 1020' contour ("The Cove") to the waters of Lake Buchanan."  *Id*.  The appellant, who owned The Cove, relied on the use of that land by his predecessor-in-interest, L.B. Dorbandt, in an effort to prove adverse possession.  *Id*. at 626.  Dorbandt testified that he built a fence along the 1020' contour line separating The Cove from the lands owned by the appellees and grazed cattle in The Cove.  *Id*.  Dorbandt testified that "the purpose of the fence was to separate 'The Cove' from the upland and to prevent his livestock from passing from his property in 'The Cove' onto the uplands."  *Id*.  The court noted that "Dorbandt's fence did not enclose 'The Cove' because it was constructed on only one side of 'The

---

[3] In *Osborn*, the Texas Supreme Court drew a distinction in designed enclosure cases where a portion of the property enclosed by the fence is owned by the person seeking adverse possession, stating, "when the disputed tract of land has been casually or incidentally enclosed with other land, especially when, as here, such other land is held by the possessor under deed, the incidental enclosure and the occasional grazing of the disputed tract by cattle straying from the titled land will not amount to such adverse and hostile possession and use as will support the statute of limitations." 267 S.W.2d at 785.

[4] Thomas O. Stoner, one of Royal's sons, testified that the high fence did not completely encompass the Stoner Ranch, stating, "It doesn't encompass the river — what we call the river pastures" or "down where you get to the river." Similarly, Bloxsom testified that the entire Stoner Ranch had not been high-fenced.

Cove.'" *Id*. In holding that the evidence failed to establish adverse possession, the Austin court

reasoned:

> The adverse claimant who relies upon grazing only as evidence of his adverse use and enjoyment must show as a part of his case that the land in dispute was designedly enclosed. Dorbandt built the fence to prevent his cattle from straying onto the uplands, and at the same time to keep the upland cattle from coming down onto the lands of "The Cove." The proof fails to show not only that "The Cove" was "designedly" enclosed, but also fails to show that the land in "The Cove" was even enclosed. By far the greater part of the boundary of "The Cove" consisted of the shores of Lake Buchanan and there was nothing to indicate that such shores were relied upon or used to enclose the land and keep out any person desiring access to the lands in "The Cove."

*Id*. (internal citations omitted).

In this case, similar to *Jamail*, the evidence established that a portion of the Stoner Ranch

was not enclosed by the high fence. In addition, only land owned by the appellants was enclosed.

Moreover, the high fence was installed only for the purpose of preventing deer from leaving the

Stoner Ranch. In summary, because the evidence in this case failed to conclusively establish that

the high fence was built to designedly enclose the land of another which land was then

continuously used for grazing, we hold that the evidence fails to conclusively establish adverse

possession under the theory of "designed enclosure."

C.      *Repudiation and Claim of Right*

Turning to the statutory definition of adverse possession, the appellants contend that actual

notice that they were repudiating the express easement was not required because the parties were

not co-tenants. The appellants further contend that the fence itself provided the requisite notice of

their claim of right.

"[A] co-tenant may not adversely possess against another co-tenant unless it clearly appears he has repudiated the title of his co-tenant and is holding adversely to it."[5]  *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 756 (Tex. 2003).  Although we agree with the appellants that the easement did not make the parties co-tenants, we conclude the same repudiation requirement should apply in the case of an easement.  Under the co-tenancy law, repudiation is required because the co-tenant holds title to the same land.  Although the party to whom an easement is granted does not have title to or a possessory interest in the land, the party has a nonpossessory interest authorizing it to use the property for a particular purpose.  *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002).  "The ouster standard that applies to cotenants differs from the adverse possession requirements courts impose between strangers because cotenants have rights to ownership and use of the property a stranger would not have."  *BP America Prod. Co. v. Marshall*, 342 S.W.3d 59, 70 (Tex. 2011).  Similarly, because an easement holder has rights to "use of the property a stranger would not have," *id*., the owner of a dominant estate claiming adverse possession of an easement should be required to meet the same adverse possession requirements imposed on a co-tenant.

The next question is whether the fence itself was sufficient notice of repudiation.  The appellants cite an illustration from the Restatement (Third) of Property to support their contention that the fence sufficiently established their adverse possession:

> Blackacre is burdened by an easement appurtenant to Whiteacre for ingress and egress to a public road.  Without permission from the owner of Whiteacre, O, the owner of Blackacre, constructed a fence along the boundary between Blackacre and Whiteacre.  The fence completely blocked entrance to the easement.  ***In the absence of other facts or circumstances***, maintenance of the fence at its current location for the prescriptive period will terminate the easement.

---

[5] Similar to the elements of adverse possession, repudiation also is generally a fact question.  *King Ranch, Inc.*, 118 S.W.3d at 756.

RESTATEMENT (THIRD) PROPERTY: SERVITUDES § 7.7 cmt. b, illus. 1 (1998) (emphasis added). We conclude that the instant case presents "other facts and circumstances" which preclude the application of this general rule, including: (1) the non-use of the easement at the time the fence was constructed; (2) the references to the easement in the subsequent deeds executed by the appellants; and (3) the absence of conclusive evidence establishing a claim of right. We focus our attention on this third distinction since it is a defined element of an adverse possession claim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.021(1) (West 2002) (defining adverse possession as "an actual and visible appropriation of real property, commenced and continued ***under a claim of right*** that is inconsistent with and is hostile to the claim of another person") (emphasis added).

In addition to the illustration in the Restatement, one Texas court has expressly recognized that a private easement "is subject to being lost by the ten-year statute of limitation." *Robinson Water Co. v. Seay*, 545 S.W.2d 253, 259 (Tex. Civ. App.—Waco 1976, no writ). In that case, a portion of an easement expressly reserved by a grantor was extinguished by the placement of a fence across that portion of the easement. *Id.* Importantly, in that case, the grantees asserting adverse possession testified that they always claimed the area enclosed in the fence as their property. *Id.* Furthermore, an adjacent landowner similarly testified that they were aware that the grantees were claiming ownership of the property inside the fence and always considered the property to belong to the grantees. *Id.* Therefore, in that case, the undisputed evidence established that the grantees verbally asserted a claim of right.

As the Texas Supreme Court has stated, "No matter how exclusive and hostile to the true owner the possession may be in appearance, it cannot be adverse unless accompanied by the intent on the part of the occupant to make it so." *Orsborn*, 267 S.W.2d at 787. "[N]aked possession unaccompanied with any claim of right will never constitute a bar." *Id.* A claim of right "must be manifested by declaration or by open or visible act." *Id.* "If there is no verbal assertion of claim

to the land brought to the knowledge of the landowner, the adverse possession must be so open and notorious and manifested by such open or visible act or acts that knowledge on the part of the owner will be presumed." *Id*. "The statute requires a visible appropriation." *Tran v. Macha*, 213 S.W.3d 913, 914 (Tex. 2006). Although establishing the necessary 'hostile' possession "does not require an intention to dispossess the rightful owner, or even know that there is one," "there must be an intention to claim property as one's own to the exclusion of all others; '[m]ere occupancy of land without any intention to appropriate it will not support the statute of limitations.'" *Tran*, 213 S.W.3d at 915 (quoting *Ellis v. Jansing*, 620 S.W.3d 569, 571 (Tex. 1981)).

In this case, the appellants did not construct the fence to exclude the appellees or any other person, but to maintain the deer on the Stoner Ranch. Thomas O. Stoner testified as follows:

> Q.     All right. And you didn't try to take something you didn't know existed, such as the easement, isn't that true?
> A.     No, I just put up the high fence.
> Q.     But you weren't putting it up to protect the easement, you were putting it up to game manage.
> A.     Yes.
> Q.     Okay. I mean, certainly your intent, your mind set was not to take some easement when putting up that high fence?
> A.     I was trying to manage the deer on the ranch.[6]

Recognizing that the doctrine of adverse possession is "a harsh one," the Texas Supreme Court has cautioned that "[b]efore taking such a severe step, the law reasonably requires that the parties' intentions be very clear." *Id*. In this case, the absence of any evidence conclusively establishing a claim of right distinguishes the instant case from the holding in *Robinson Water Co.* and supports the trial court's conclusion that the appellants failed to prove each of the elements necessary to establish adverse possession.

---

[6] Bloxsom also testified that the high fence was used for game management.

**CONCLUSION**

The trial court's judgment is affirmed.[7]

Catherine Stone, Chief Justice

---

[7] Although additional issues were raised in appellants' brief, this opinion addresses only those issues necessary for the disposition of the appeal. *See* TEX. R. APP. P. 47.1.