Opinion issued August 1, 2017



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-15-01109-CV

_____

**BSG-SPENCER HIGHWAY JOINT VENTURE, G.P. AND BEST STORAGE GROUP, LLC, Appellants/Cross-Appellees**

**V.**

**MUNIBA ENTERPRISES, INC., Appellee/Cross-Appellant**

---

**On Appeal from the 11th District Court
Harris County, Texas
Trial Court Case No. 2014-70102**

---

## MEMORANDUM OPINION

This appeal and cross-appeal concern the interpretation of restrictions and reciprocal easements between two contiguous tracts of commercial real property located at the intersection of Spencer Highway and Center Street in Pasadena, Texas.

Appellee/cross-appellant Muniba Enterprises, Inc. sued BSG-Spencer Highway Joint Venture, G.P. and Best Storage Group, LLC (collectively "BSG") alleging breach of the Declaration of Restrictions and Grant of Easements ("the Declaration") and seeking a declaratory judgment with respect to the validity and location of the easement set forth in the Declaration. BSG asserted counterclaims alleging, among other things, breach of the Declaration and its amendments. Following a two-day bench trial, the trial court issued findings of fact and conclusion of law and entered an amended final judgment.

In three issues, BSG contends that the trial court erred in (1) determining that the Declaration created an enforceable easement and entering judgment in favor of Muniba; (2) refusing to grant a permanent injunction enjoining Muniba from allowing its tenants and customers to park and place its dumpsters on BSG's property; and (3) awarding attorney's fees to Muniba and refusing to award attorney's fees to BSG. In three cross-issues, Muniba contends that the trial court erred in (1) interpreting the terms of the Declaration and limiting the easement to a specific location; (2) interpreting the second amendment to the Declaration to allow the construction of a second building on the property owned by BSG; and (3) prohibiting Muniba's tenants and patrons from using the "no-build area" of BSG's property for parking. We affirm in part and reverse in part.

## Background

### A. Factual History

By deed dated June 21, 1994, Steven Graham sold to Albertson's, Inc. all of "Reserve A" of "Albertson's Center Street" property consisting of 7.007 acres located at 7430 Spencer Highway ("Parcel 2"). Graham retained ownership of a 31,859 square foot area in the southeast quadrant of the shopping center adjoining Center Street, denominated as "Reserve B" of Albertson's Center Street and commonly known as 7438 Spencer Highway ("Parcel 1").

On June 21, 1994, the parties executed a "Declaration of Restrictions and Grant of Easements" setting forth the rules and restrictions binding the two parcels. A metes-and-bounds description of Parcels 1 and 2 ("Schedule 1") as well as a site plan depicting the two parcels, two curb cuts from Spencer Highway on the northern end of the shopping center, two curb cuts from Center Street on the eastern side of the center, and areas marked for parking and driveways are attached to the Declaration.[1] Graham and Albertson's executed two amendments to the Declaration on December 16, 1994 and August 4, 1995.

The Declaration provides, in pertinent part:

. . . .

Paragraph 2: Buildings Size and Location: One building may be constructed on Parcel 1. . . . Notwithstanding anything to the contrary

---

[1] The site plan is attached as Exhibit "A" to this memorandum opinion.

3

which may be shown on Exhibit "A," (a) [Graham] shall have the right to construct its building anywhere on Parcel 1 subject to the provisions of this Declaration, and (b) Albertson's shall have the right to construct its building(s) anywhere on Parcel 2 subject to the provisions of this Declaration. Nothing in this Declaration shall be deemed to require either party to construct a building on its parcel or to limit the size of the building(s) constructed on Parcel 2.

Paragraph 3: Parking Requirements: Adequate vehicle parking spaces for employees, customers, visitors and all other users of any building on Parcel 1 shall be provided for on such parcel.

. . . .

Paragraph 6: Easement: Albertson's grants to [Graham] and to all subsequent owners of any portion of Parcel 1, their respective tenants, contractors, employees, agents, customers, licensees and invitees, and the subtenants, contractors, employees, agents, customers, licensees and invitees of such tenants, for the benefit of Parcel 1, a perpetual non-exclusive easement for ingress and egress by vehicular and pedestrian traffic upon, over and across those portions of Parcel 2 which are from time to time developed for ingress and egress for the purpose of providing uninterrupted access from Parcel 1 to Center Street and to Spencer Highway. [Graham] grants to Albertson's and to all subsequent owners of any portion of Parcel 2, their respective tenants, contractors, employees, agents, customers, licensees and invitees, and the subtenants, contractors, employees, agents, customers, licensees and invitees of such tenants, for the benefit of Parcel 2, as [sic] perpetual non-exclusive easement for ingress and egress by vehicular and pedestrian traffic upon, over and across those portions of Parcel 1 which are from time to time developed for ingress and egress for the purpose of providing uninterrupted access to Parcel 2.

. . . .

Paragraph 11: Injunctive Relief: In the event of any violation or threatened violation by any person of any of the restrictions contained in this Declaration, any or all of the owners of Parcel 1 and Parcel 2 shall have the right to enjoin such violation or threatened violation in a court of competent jurisdiction. The right of injunction shall be in

addition to all other remedies set forth in this Declaration or provided by law.

. . . .

Paragraph 14: Attorney's Fees: In the event any person initiates or defends any legal action or proceeding to enforce or interpret any of the terms of this Declaration, the prevailing party in any such action or proceeding shall be entitled to recover from the losing party in any such action or proceeding its reasonable costs and attorney's fees (including its reasonable costs and attorney's fees on any appeal).

Thus, it is apparent that, for easement purposes, Parcel 1 retained by the original owner was the dominant estate and Parcel 2 was the servient estate.

The first amendment to the Declaration referred to a previously agreed upon adjustment of the boundaries between Parcel 1 and Parcel 2, and revised the site plan and the property description of the parcels in Schedule 1 incorporated in and attached to the Declaration to reflect the adjustment. The second amendment made the following substantive changes to the original declaration:

2. <u>Amendment to Section 2</u>. Section 2 of the Declaration is amended so as to read in its entirety as follows:

. . . .

(b) The Owner of Parcel 2 may construct a building anywhere on Parcel 2 except within the "No Build Area" shown on Exhibit "A." The Owner of Parcel 2 may locate up to two "kiosk" style facilities (such as, for purposes of example only) an espresso cart or stand, a remote drive-up bank facility, a shaved ice or snow cone stand) within the No Build Area north of the drive aisle leading east and west across the No Build Area from the curb cut onto Center Street, provided that no such "kioskuse" [sic] located within the "No Build Area" shall occupy an area larger than four (4) parking spaces.

5

Section 3 of the Declaration, which provides that "[a]dequate vehicle parking spaces for employees, customers, visitors and all other users of any building located on Parcel 1 shall be provided for on said parcel," was also amended to increase the minimum number of required parking spaces.

In 1994, Albertson's began construction of its main supermarket building on Parcel 2 with a contractually required substantial completion date of June 24, 1995. In 2000, Albertson's constructed a gas station with pumps, a canopy over the pumps, and an administrative office in the northwest corner of Parcel 2.

By special warranty deed dated November 9, 2004, Muniba purchased Parcel 1 subject to the conditions expressly stated in the deed and set out in Exhibit A attached to the deed, which referenced the Declaration and subsequent amendments. On June 25, 2013, BSG purchased Parcel 2 "subject to all easements, restrictions, reservations and covenants now of record," which included the Declaration and its amendments.

Following its purchase of Parcel 2, BSG redeveloped the tract as a self-storage rental facility. As part of the redevelopment, BSG tore down the Albertson's gas station structure, constructed a sales office, closed the westernmost curb cut along Spencer Highway, and added a canopy to the original Albertson's building which allegedly extended over and obstructed the driveway from Spencer Highway to

Parcel 1. BSG's proposed site plans also included a fence separating Parcel 1 and Parcel 2 and the construction of a second building on Parcel 2.

## B. Procedural History

On October 30, 2014, Muniba provided BSG with written notice advising that BSG's actions were in violation of the Declaration. According to Muniba, BSG's proposed plans would have eliminated the previously "uninterrupted access" afforded under the easement "upon, over and across" BSG's property, and "severely restrict[] use of the easement by persons seeking to access Parcel 1 from Spencer Highway," in violation of the Declaration and amendments. On November 3, 2014, BSG responded in writing that the Declaration, as amended, did not restrict BSG from using its property as it proposed to do.

On December 2, 2014, Muniba filed its original petition and application for temporary restraining order and temporary injunction against BSG, alleging breach of contract based on BSG's violations of the Declaration and its amendments. Muniba also sought declaratory relief that (1) the Declaration and its amendments are valid and subsisting contracts; (2) the Declaration prohibits BSG from erecting a fence between Parcel 1 and Parcel 2; (3) BSG's proposed site plans violate the Declaration and its amendments; (4) the Declaration was intended to provide for equal ingress and egress to and from Spencer Highway and Center Street across Parcel 1 and Parcel 2; (5) only one building can exist on Parcel 2, one building

7

already exists, and therefore no other building can be constructed; and (6) both parties have a reciprocal easement to use their respective lots for parking. Muniba also sought temporary and permanent injunctions as well as attorney's fees.

On December 19, 2014, the trial court signed a temporary injunction enjoining BSG from (1) erecting or maintaining any fence dividing the two parcels and (2) interfering with the ingress or egress "upon, over or across Parcel 2" or interfering with the northeastern most driveway (closest to Center Street). The court's order did not require BSG to alter its temporary construction fencing on Parcel 2, cease construction of its sales office, or prohibit BSG from closing the western curb cut from Spencer Highway. The trial court amended the temporary injunction on January 8, 2015 and March 2, 2015.

On February 6, 2015, BSG answered asserting the affirmative defenses of waiver, estoppel, statute of frauds, and statute of conveyances. BSG also filed counterclaims against Muniba for trespass and nuisance as well as breach of the Declaration and its amendments based on Muniba's permitting its tenants and visitors to Parcel 1 to park their vehicles and place their trash dumpsters on Parcel 2. BSG sought actual damages, declaratory and injunctive relief, and attorney's fees.

On March 30, 2015, Muniba filed its second amended petition and, on April 29, 2015, it filed a supplemental petition (the live pleadings). On April 8, 2015,

Muniba answered BSG's counterclaim and asserted a limitations defense with respect to BSG's claims for trespass and nuisance.

A two-day bench trial began on April 28, 2015. After Muniba rested, BSG moved for judgment as a matter of law. The trial court denied BSG's motion. The trial court later granted Muniba's request for a trial amendment alleging easements by necessity and estoppel.

On May 21, 2015, the trial court signed initial findings of fact and conclusions of law; on July 28, 2015, the court entered amended findings and conclusions; and, on September 22, 2015, it signed supplemental findings and conclusions. On September 21, 2015, the trial court entered a final judgment and, on September 29, 2015, it signed an amended final judgment.

In its amended final judgment, the trial court ordered that (1) the Declaration and amendments "are valid and enforceable contracts which are not ambiguous"; (2) Muniba is entitled to "a perpetual non-exclusive easement for vehicular and pedestrian ingress and egress for the purpose of providing straight, uninterrupted, and unobstructed access upon, over and across Parcel 2 to Parcel 1 to and from Center Street and to and from Spencer Highway"; (3) the easement over and across Parcel 2 to Parcel 1 from Spencer Highway must be a straight, unobstructed, and uninterrupted route that is at least twenty-eight feet wide; (4) no vehicles may be parked at any time upon the easements tracts, and the tracts are to remain free from

9

obstruction, including, without limitation, fencing, curbing areas, and support structure for canopies or awnings; and (5) no supporting portion of the canopy/awning on the eastern side of BSG's Building A on Parcel 2 from the grounds to the currently existing canopy/awning may exist within the easement tracts, and that all columns, supporting structures, and concrete footings must be removed within thirty days after the date of judgment. The amended judgment further enjoined BSG from (1) constructing any fence or other structure on Parcel 2 that would eliminate Muniba's uninterrupted and unobstructed straight line-of-sight access to Parcel 1 from Spencer Highway and (2) using any building on Parcel 2 for residential purposes. The court declared that the term "a building," as used in Paragraph 2(b) of the second amendment to the Declaration, means one additional building, and that no additional buildings may be built on Parcel 2. The court further ordered that BSG's counterclaims of trespass and nuisance were barred by the statute of limitations and it denied all relief requested by BSG with respect to those claims. The trial court awarded attorney's fees to Muniba.

BSG appealed, and Muniba cross-appealed.

### Standards of Review

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Nguyen v. Yovan*, 317 S.W.3d 261, 269–70 (Tex. App.—Houston [1st Dist.] 2009,

10

pet. denied). When challenged, a trial court's findings of fact are not conclusive if there is a complete reporter's record on appeal. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). We review a trial court's findings of fact under the same legal sufficiency of the evidence standard used when determining whether sufficient evidence exists to support an answer to a jury question. *See Catalina*, 881 S.W.2d at 297; *Nguyen*, 317 S.W.3d at 269–70.

An appellant may not challenge a trial court's conclusions of law for factual sufficiency, but we may review the legal conclusions drawn from the facts to determine their correctness. *See BMC Software*, 83 S.W.3d at 794. In an appeal from a bench trial, we review the conclusions of law de novo and will uphold them if the judgment can be sustained on any legal theory supported by the evidence. *See id.* "If the reviewing court determines a conclusion of law is erroneous, but the trial court rendered the proper judgment, the erroneous conclusion of law does not require reversal." *Id.*

The grant or denial of a permanent injunction is reviewed under an abuse of discretion standard. *Tanglewood Homes Ass'n, Inc. v. Feldman*, 436 S.W.3d 48, 76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (citing *Lakeside Realty, Inc. v. Life Scape Homeowners Ass'n*, 202 S.W.3d 186, 190 (Tex. App.—Tyler 2005, no pet.)). Similarly, a trial court's determination and award of attorney's fees is also reviewed under an abuse of discretion standard. *Ryan v.*

11

*Abdel-Salam*, 39 S.W.3d 332, 337 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). Generally, a trial court abuses its discretion if it misinterprets or misapplies the law, or if it acts arbitrarily or unreasonably. *Tanglewood Homes Ass'n*, 436 S.W.3d at 69.

## BSG's Appeal

### A. Enforceability of Easement

In its first issue comprised of four sub-issues, BSG contends that the trial court committed reversible error in determining that the Declaration created an enforceable easement and entering judgment in favor of Muniba. Specifically, it argues that (1) the easement granted in the Declaration does not satisfy the statute of frauds or the statute of conveyances; (2) the trial court's imposition of an immovable, straight-line permanent easement misconstrues the term "uninterrupted" and ignores the express language in the grant permitting BSG to relocate the easement "from time to time" as its property is developed; (3) Muniba could not maintain its action for breach of the Declaration because it breached the Declaration itself; and (4) the trial court abused its discretion in permanently enjoining BSG from obstructing or parking upon the easement imposed by the court because the easement grant was unenforceable under the statute of frauds.

## 1. Statute of Fraud and Statute of Conveyance

BSG contends that the easement does not satisfy the statute of frauds and statute of conveyances because the Declaration fails to sufficiently describe the location and size of the easement. Thus, BSG argues, the easement is void as a matter of law.

### a. Applicable Law

The Statute of Frauds requires that a contract for the sale of real estate be in writing and signed by the person to be charged. TEX. BUS. & COM. CODE ANN. § 26.01 (West 2015). The statute of conveyances likewise dictates that a conveyance of real estate be in writing and subscribed to and delivered by the conveyor. TEX. PROP. CODE ANN. § 5.021 (West 2014).[2] "An easement is an interest in land which is subject to the Statute of Frauds." *Pick v. Bartel*, 659 S.W.2d 636, 637 (Tex. 1983). "If an easement does not sufficiently describe the interest conveyed, the conveyance is void." *Schuhardt Consulting Profit Sharing Plan v. Double Knobs Mountain Ranch, Inc.*, 426 S.W.3d 800, 803 (Tex. App.—San Antonio 2014, pet. denied) (quoting *West Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248, 264 (Tex. App.—

---

[2] The test for sufficiency of a writing is essentially the same in both the statute of frauds and the statute of conveyances. *See, e.g., Broaddus v. Grout*, 152 Tex. 398, 258 S.W.2d 308, 309 (1953); *W. Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248, 264 (Tex. App.—Austin 2002, no pet.). Thus, for ease of reference, we refer generally to the statute of frauds.

Austin 2002, no pet.)).  "'To be sufficient, the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the land to be conveyed may be identified with reasonable certainty.'"  *Id.* (quoting *Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex. 1972)).

Even if an easement is uncertain, however, a court is not authorized "to completely ignore the valuable right thereby granted if the clause is still susceptible of a reasonable construction as to its true intent and meaning."  *See Hubert v. Davis*, 170 S.W.3d 706, 711 (Tex. App.—Tyler 2005, no pet.).  "If enough appears in the description so that a person familiar with the area can locate the premises with reasonable certainty, it is sufficient to satisfy the Statute of Frauds."  *Schuhardt Consulting Profit Sharing Plan*, 426 S.W.3d at 803; *Vinson v. Brown*, 80 S.W.3d 221, 227 (Tex. App.—Austin 2002, no pet.).  With express easements, "an exact designation of location is unnecessary, as long as the tract of land that will be burdened by the easement is sufficiently identified," and inaction in failing to mark and establish the boundaries of an easement at the time the grant is made "does not cause the grant to fail." *Vinson*, 80 S.W.3d at 227.  Language that clearly shows an intention to grant an easement is sufficient for the purpose; no special form or particular words need be employed.  *See Hubert*, 170 S.W.3d at 711.

### b.  Analysis

Paragraph 6 of the Declaration provides, in pertinent part:

14

Albertson's grants to [Graham] and to all subsequent owners of any portion of Parcel 1, their respective tenants, contractors, employees, agents, customers, licensees and invitees, and the subtenants, contractors, employees, agents, customers, licensees and invitees of such tenants, for the benefit of Parcel 1, *a perpetual non-exclusive easement for ingress and egress by vehicular and pedestrian traffic upon, over and across those portions of Parcel 2 which are from time to time developed for ingress and egress for the purpose of providing uninterrupted access from Parcel 1 to Center Street and to Spencer Highway.* (Emphasis added)

Parcels 1 and 2 are legally described in their parties' deeds, respectively, as:

All of Reserve "B" of ALBERTSON'S CENTER STREET, an addition in Harris County, Texas, according to the map or plat thereof recorded under Film Code No. 364059 of the Map Records of Harris County, Texas, together with all improvements thereon (the "Property").

All of Restricted Reserve "A," of Albertson's Center Street, a subdivision in Harris County, Texas, according to the map or plat thereof, recorded under Film Code No. 364059 of the Map Records of Harris County, Texas.

In ruling on Muniba's request for declaratory relief regarding the easement, the trial court found that "[t]he Restrictive Covenants are valid and enforceable contracts which are not ambiguous. The legal descriptions of Parcel 1 and 2 in the Declaration are sufficient to fix the boundaries of the easement created by the Declaration" (Conclusion of Law No. 12).

BSG argues that the Declaration does not specify the dimensions or the location of the easement granted across Parcel 2 for ingress and egress to Parcel 1 from Spencer Highway. It asserts that the site plan attached to the Declaration and its amendments does nothing more than reflect two curb cuts (i.e., entrances) from

15

Spencer Highway onto Parcel 2. BSG further argues that even if the depicted curb cuts could be construed as the starting points of an easement for ingress and egress from Spencer Highway to Parcel 1, the drawing does not depict either the route or the boundaries of any easement across Parcel 2 from those curb cuts.

In examining this issue, we find several cases instructive. In *Schuhardt Consulting Profit Sharing Plan*, the plaintiffs alleged adverse possession of an easement across their property that had been previously expressly granted by their predecessor-in-interest to the defendant's predecessor-in-interest. 426 S.W.3d at 802. After a bench trial, the trial court entered judgment in favor of the defendants. *See id.* On appeal, the plaintiffs argued, among other things, that the express easement violated the statute of frauds because it could not be located with reasonable certainty. *See id.*

Initially noting that it was undisputed that the 1979 deed in question sufficiently identified the tract of land burdened by the easement, the trial court found that the testimony and photographic exhibits established the starting point of the easement as well as how the property had been previously used. *See id.* at 803–04. The court concluded that the evidence established that a person familiar with the area could locate the easement with reasonable certainty and held that the easement did not violate the statute of frauds. *See id.* at 804.

In *West Beach Marina Ltd.*, property owners sued a marina partnership following the partnership's repudiation of a mediated settlement agreement regarding easement rights across the property where the partnership proposed to build a marina. 94 S.W.3d at 253–54. The 1958 conveyance, which conveyed 5.873 acres ("Tract 3") of an 88-acre tract of land, included an easement to the water's edge but also the right "to install water lines, boat docks, etc. of the type customarily used in connection with lake property in the area." *Id.* at 264. The partnership argued that the underwater portions of the easement were not adequately described and, thus, void under the statute of frauds. *See id.*

The court noted that the description of the area beyond the water's edge on which the property owners could place boat docks and water lines was less exact than the description of the property to the water's edge over which passage was granted. *See id.* However, it stated that "[t]he fact that an easement is uncertain does not authorize the court to completely ignore the right granted, if the easement is susceptible to a reasonable construction as to its true intent and meaning." *Id.* The court concluded that although the easement did not describe its exact width, it provided the "framework or skeleton" so the court could resort to parole evidence to fill in this detail. *See id.* (noting that statute of frauds requires that easement provide enough detail that court may determine parties' intent, essential terms of easement,

17

and adequate description of location of easement without resort to extrinsic evidence).

In *Hubert*, the plaintiff, a subdivision lot owner, sought a declaratory judgment that he was the sole and exclusive owner of the lot, and the defendant counterclaimed seeking declaratory judgment recognizing an easement burdening the plaintiff's lot. 170 S.W.3d at 706. The restrictive covenants stated, in relevant part:

> There is hereby granted unto all owners of lots in said subdivision the free use, liberty and privilege of passage in and along, over and across all of Lot No. 9 Block No. 1 of said Subdivision with free ingress and egress to said owners with boats, boat trailers and other vehicles, and travel by foot, and the right to temporarily park thereon boats, boat trailers, and other vehicles incident to the use of such property as a boat landing.

*Id.* at 711. The court concluded, "[b]y its plain language, paragraph 13 creates by express grant a burden on a servient estate, Lot 9, for the benefit of the dominant estates, all other lots in the subdivision." *Id.*

Here, it is undisputed that BSG's deed provides a valid legal description of Parcel 2 (the tract of land burdened by the easement). *See Vinson*, 80 S.W.3d at 227 (noting that with express easements, "an exact designation of location is unnecessary, as long as the tract of land that will be burdened by the easement is sufficiently identified"). In addition, the site plan attached to the Declaration and its amendments depicts more than merely the curb cuts from Spencer Highway onto

18

Parcel 2. It delineates the width and location of the curb cuts and, thus, the starting points of the easement, as well as areas marked for parking and for driveways as are commonly used in shopping centers. The trial court heard testimony that, prior to BSG's purchase of Parcel 2 in 2013, Muniba's tenants and customers accessed the shopping center from both curb cuts at Spencer Highway and were able to drive through the parking lot to reach the center. We also note that the language in paragraph 6 of the Declaration—"an easement for ingress and egress by vehicular and pedestrian traffic upon, over and across those portions of Parcel 2"—is similar to the language of the restrictive covenant the *Hubert* court found sufficient.

We conclude that the easement grant is susceptible of a reasonable construction as to its true intent and meaning. Because the trial court reasonably concluded that the easement satisfies the statute of frauds and statute of conveyances, we overrule BSG's first sub-issue.

### 2. Trial Court's Definition of the Easement

In its second sub-issue, BSG argues that the trial court's imposition of an immovable, straight-line permanent easement (1) misconstrues the term "uninterrupted" as used in the easement; (2) inappropriately sets the width of the easement as "at least twenty-eight (28) feet wide" solely by implication; and (3) creates a permanent, non-moveable easement contrary to the terms of the easement grant.

In Conclusion of Law No. 15, the trial court stated "[n]either of the alternatives proposed by BSG-Spencer to date provide uninterrupted ingress and egress between Spencer and Parcel 1." The court noted that the first route BSG proposed required two 90-degree turns to reach the Parcel 1 parking area and completely obstructed the view of Parcel 1 from Spencer Highway, and the second proposed route did not appear to provide adequate space for two cars to pass each other and did not provide relatively straight access without Muniba having to remove a curbed island and parking spots located at the northwest corner of Parcel 1. In Conclusion of Law No. 14, the trial court stated "BSG-Spencer's contention that any access navigable by an automobile complies with the wording of the easement ignores the adjective 'uninterrupted' and makes it surplusage. In this context the only reasonable construction of 'uninterrupted' is a route that provides an unobstructed line-of-sight to Parcel 1 as well as adequate space for cars to pass each other during ingress and egress." In its first amended final judgment, the trial court ordered that "the perpetual non-exclusive easement for ingress and egress upon, over and across Parcel 2 to Parcel 1 from Spencer Highway must be a straight [line-of-sight] unobstructed and uninterrupted route that is at least twenty-eight (28) feet wide." BSG argues that, in doing so, the trial court misconstrued the term "uninterrupted."

20

The Texas Supreme Court has stated that "[w]hen the grant's terms are not specifically defined, they should be given their plain, ordinary, and generally accepted meaning." *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 701 (Tex. 2002). "The term 'uninterrupted' means 'continuous[,]' which means 'stretching on without break[.]'" *Emmons v. Badanfirouz*, No. 09-12-00590, 2013 WL 6705979, at *4 (Tex. App.—Beaumont Dec. 19, 2013, no pet.). (mem. op.) (citing WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 493–94, 2499 (2002)). The cases in which Texas courts have addressed the term "uninterrupted" in the context of easement grants involve the erection of gates or cattle guards by the grantor which prevented access to or use of the easement. *See, e.g.*, *Emmons*, 2013 WL 6705979, at *1 (upholding trial court's determination that use of term "uninterrupted" in easement grant precluded erection of gates on easement); *McKenna v. Caldwell*, 387 S.W.3d 830, 835 (Tex. App.—Eastland 2012, no pet.) (stating that "[m]ost cattle guards would not be considered an 'interruption' or an 'obstruction'"); *Hillburn v. Providian Holdings, Inc.*, No. 01–06–00961–CV, 2008 WL 4836840, at *4–6 (Tex. App.—Houston [1st Dist.] Nov. 6, 2008, no pet.) (mem. op.) (holding that easement language "providing free and uninterrupted pedestrian and vehicular ingress to and egress from the Dominant Estate property" prohibited fencing that denied access); *Barrow v. Pickett*, No. 01-06-00664, 2007 WL 3293712, at *4 (Tex. App.—Houston [1st Dist.] Nov. 8, 2007, no pet.) (mem. op.) (holding that absent words

"uninterrupted" or "unobstructed" in easement grant, servient estate owner was permitted to erect gate within easement). However, the plain, ordinary, and generally accepted meaning of "uninterrupted" does not imply or suggest that the easement at issue must be straight or have an unobstructed line-of-sight from Spencer Highway to Parcel 1, and the words straight, unobstructed, and line-of-sight do not appear in the express easement grant. To impose such requirements would be "to read terms into the four corners of the document that are not there," something which courts cannot do. *Barrow*, 2007 WL 3293712, at \*3 (citing *Coleman v. Forister*, 514 S.W.2d 899, 903 (Tex. 1974)).

The trial court also ordered that the easement be "at least twenty-eight (28) feet wide," ostensibly based on a City of Pasadena ordinance requiring that "minor" streets be twenty-eight feet wide. However, the Declaration and site plan are silent with regard to the width of the easement. *See Marcus Cable*, 90 S.W.3d at 701 ("Nothing passes by implication 'except what is reasonably necessary' to fairly enjoy the rights expressly granted."). By imposing such a requirement, the trial court added a term that is not present in the Declaration or site plan. *Barrow*, 2007 WL 3293712, at \*3; *DeWitt Cty. Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 103 (Tex. 1999) ("[W]hen . . . an easement is created by an express grant, the scope of the easement holder's rights must be determined by the terms of the grant.").

Because we conclude that the trial court erred when it interpreted the Declaration to grant Muniba a straight, unobstructed line-of-sight route that is at least twenty-weight (28) feet wide, we sustain the portion of BSG's first issue challenging the trial court's imposition of those requirements.

### 3. Injunction Enjoining BSG from Parking on or Otherwise Obstructing Easement

In its fourth sub-issue, BSG argues that the trial court abused its discretion in permanently enjoining BSG from obstructing or parking upon the easement imposed by the court because the easement was unenforceable under the statute of frauds. BSG's argument is premised upon its argument previously raised under its first sub-issue. Because we concluded that the easement is susceptible of a reasonable construction as to its true intent and meaning and therefore satisfies the statute of frauds, we overrule BSG's fourth sub-issue.

### 4. Alleged Prior Breaches of Declaration

In its third sub-issue, BSG asserts that Muniba breached the Declaration by allowing its tenants and visitors to its shopping center to park their vehicles on Parcel 2 and by placing its trash dumpsters and those of its tenants on Parcel 2. BSG argues that because Muniba committed these prior material breaches of the Declaration, it could not maintain its action for breach of the Declaration by BSG.

Paragraph 3 of the Declaration, as amended, provides that "[a]dequate vehicle parking spaces for employees, customers, visitors and other users of any building

23

located on Parcel 1 shall be provided on said Parcel." In Conclusion of Law No. 19, the trial court stated, "[t]he easement across Parcel 2 does not include the right to park on Parcel 2. Muniba's tenants, employees and customers cannot park on Parcel 2." In Supplemental Conclusion of Law No. 6, the trial court stated "[t]he parking of vehicles by Muniba, its tenants, invitees and licensees, as well as the placement of garbage dumpsters by Muniba and its tenants, upon Parcel 2 constitutes breaches of the Declaration by Muniba."

BSG argues that, despite the language in the Declaration and second amendment limiting parking by Muniba, its tenants, and customers to Parcel 1, Muniba, its tenants, and visitors continuously parked their vehicles on Parcel 2, without BSG's permission. In support of its argument, BSG relies on the general contract principle that "a party to a contract who is himself in default cannot maintain a suit for its breach." *Dobbins v Redden*, 785 S.W.2d 377, 378 (Tex. 1990). Thus, BSG asserts, Muniba's actions constitute prior material breaches that preclude its breach of contract action against BSG.

In response, Muniba asserts that although the defense of prior material breach applies to claims of breach of contract, it does not apply to claims relating to breach of other restrictive covenants. Contrary to Muniba's argument, restrictive covenants are subject to the same rules of construction and interpretation as contracts. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998); *Elbar Investments, Inc. v. Garden*

24

*Oaks Maint. Org.*, 500 S.W.3d 1, 3 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (concluding that deed restrictions at issue were restrictive covenants concerning real property and subject to rules of contract construction).

Muniba asserts that even if the defense of prior breach applies, BSG may not avail itself of the defense because it failed to plead prior material breach as a defense. *See Compass Bank v. MFP Fin. Servs.*, 152 S.W.3d 844, 852 (Tex. App.—Dallas 2005, pet. denied); *RE/MAX of Tex., Inc. v. Katar Corp.*, 961 S.W.2d 324, 327 (Tex. App.—Houston [1st Dist.] 1997, writ denied). However, the record reflects that BSG filed a counterclaim alleging that Muniba breached and was continuing to breach the Declaration and its amendments by permitting the tenants of and visitors to Parcel 1 to park their vehicles and place their trash dumpsters on Parcel 2. BSG sought unspecified actual damages, declaratory relief with respect to the rights and obligations of the parties, and injunctive relief prohibiting Muniba from continuing to allow parking and the placement of trash dumpsters on Parcel 2. BSG's counterclaim gave fair notice to Muniba of its intent to raise the affirmative defense of prior material breach. *See West v. Pugh*, No. 01-12-00133-CV, 2013 WL 3327287, at *7 (Tex. App.—Houston [1st Dist.] June 27, 2013, no pet.) (mem. op.). Further, the issue of prior material breach was tried by consent. Here, the record shows that BSG presented testimonial and photographic evidence that Muniba, its employees, tenants, and patrons were continuing to park and place dumpsters on

Parcel 2. Muniba never objected to this evidence. Considering the record as a whole, it is apparent that both Muniba and BSG understood that the issue of prior material breach was in the case and that the issue was actually tried. *See id.*

The trial court properly concluded that "[t]he parking of vehicles by Muniba, its tenants, invitees and licensees, as well as the placement of garbage dumpsters by Muniba and its tenants, upon Parcel 2 constitutes breaches of the Declaration by Muniba." *See BMC Software*, 83 S.W.3d at 794. Because Muniba committed a prior material breach of the Declaration, it could not maintain its breach of contract claim against BSG. *See Dobbins*, 785 S.W.2d at 378. We sustain BSG's third sub-issue. Muniba's inability to maintain its breach of contract action leaves it only with its declaratory judgment action requesting an exegesis of the easement language in the Declaration.

**B. Trial Court's Denial of BSG's Request for Permanent Injunction**

In its second issue, BSG contends that the trial court abused its discretion in denying BSG's request for a permanent injunction enjoining Muniba from further breaching the Declaration by continuing to permit its tenants and customers from parking on BSG's property as well as placing its dumpsters in BSG's property.

Injunctive relief is appropriate upon a showing of the following elements: (1) the existence of a wrongful act, (2) the existence of imminent harm, (3) the existence of irreparable injury, and (4) the absence of an adequate remedy at law. *Jim*

26

*Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 849 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).[3] "Because an injunction is an equitable remedy, a trial court weighs the respective conveniences and hardships of the parties and balances the equities." *Computek Computer & Office Supplies, Inc. v. Walton*, 156 S.W.3d 217, 220 (Tex. App.—Dallas 2005, no pet.). A party must substantially violate a deed restriction before the trial court may issue a permanent injunction. *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 690 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

We review a trial court's ruling on applications for permanent injunctions for an abuse of discretion. *Operation Rescue–Nat'l v. Planned Parenthood of Hous. Se. Tex., Inc.*, 975 S.W.2d 546, 560 (Tex. 1998). "The trial court does not abuse its discretion when its decision is based on conflicting evidence and some evidence in the record reasonably supports the trial court's decision." *Triantaphyllis v. Gamble*, 93 S.W.3d 398, 402 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). A party seeking an injunction has the burden of showing that a clear equity demands the injunction. *Christensen v. Integrity Ins. Co.*, 719 S.W.2d 161, 163 (Tex. 1986); *Indian Beach Prop. Owners' Ass'n*, 222 S.W.3d at 691.

---

[3] When the basis of the suit is enforcement of deed restrictions, a movant seeking injunctive relief is only required to prove that the defendant intends to do an act that would breach the restrictive covenant rather than show irreparable injury. *See Jim Rutherford Invs., Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 849 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).

Here, the evidence was undisputed that Muniba, its tenants, and customers parked their vehicles and placed trash dumpsters on Parcel 2 without BSG's permission. The trial court found that "[t]he parking of vehicles by Muniba, its tenants, invitees and licensees, as well as the placement of garbage dumpsters by Muniba and its tenants, upon Parcel 2 constitutes breaches of the Declaration by Muniba." BSG established the first element of its claim for injunctive relief, the existence of a wrongful act. *See Rutherford Invs., Inc.*, 25 S.W.3d at 849.

However, to obtain a permanent injunction, the party seeking it must also bring forth evidence showing imminent harm. *See id.* When asked by BSG's counsel why Muniba's parking on BSG's property was a problem, Robin Parsley, BSG's representative, testified "[b]ecause we may use that in our future business plan" and "[w]e don't know what type of vehicles they're going to be or how long they're going to stay or what they're doing." With regard to the dumpsters, Parsley testified that Muniba's and its tenants' trash dumpsters impeded BSG's right to use its driveway for ingress and egress to Center Street by requiring customers to drive around the trash receptacles to get to the storage facility.

Muniba presented testimony that BSG never complained about the parking or trash dumpsters until after it had filed suit against BSG in 2014. In its Finding of Fact No. 8, the trial court found "[i]nvitees, customers and other patrons of Parcel 1 have been parking in Parcel 2's 'No Build Area' since at least November of 2004

28

when Muniba purchased Parcel 1." The record further reflects that the "no-build area" was striped for parking and could not be used to construct any other permanent building. Mohammed Patel, Muniba's representative, also testified that the location of the dumpsters was sometimes a question of where the trash service replaced them after emptying them.

Although the trial concluded that Muniba, its tenants, and customers did not have a right to park or place their dumpsters on Parcel 2 under the terms of the Declaration, it declined to grant the requested injunctive relief based on its findings that Muniba, its tenants, and customers had been parking on Parcel 2 since 2004, nobody else was using the space, and that BSG's request for an injunction was "purely vindictive." Because there is some evidence in the record that supports the trial court's conclusion that BSG failed to show that the balance of equities plainly favored it, the trial court did not abuse its discretion in declining to award injunctive relief to BSG. *See Christensen*, 719 S.W.2d at 163 (stating that party seeking injunctive relief has burden to show clear equity demands injunction); *Int'l Paper Co. v. Harris Cty.*, 445 S.W.3d 379, 396 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (concluding that, at best, balance of equities did not weigh in favor of finding that trial court erred in denying injunctive relief). We overrule BSG's second issue.

## Muniba's Cross-Appeal

### A. Scope of the Easement

In its first cross-issue, Muniba argues that the trial court erred in restricting the easement to a specific location rather than the described historic use of the easement. It argues that the unambiguous terms of the Declaration provide Parcel 1 with an easement for unrestricted access over, upon, and across the entirety of Parcel 2 for purposes of ingress and egress.

#### 1. Applicable Law

An easement is a non-possessory interest in another's property that authorizes its holder to use that property for a particular purpose. *See Marcus Cable Assocs.*, 90 S.W.3d at 700. "A grant or reservation of an easement in general terms implies a grant of unlimited reasonable use as is reasonably necessary and convenient and as little burdensome as possible to the servient owner." *Coleman*, 514 S.W.2d at 903. "No interest in real property passes by implication as incidental to a grant except what is reasonably necessary to its fair enjoyment." *Id.*

When considering the rights and constraints under an express easement, a court must first consider the language of the easement itself. *See Reaves v. Lindsay*, 326 S.W.3d 276, 280 (Tex. App.—Houston [1st Dist.] 2010, no pet.). The express terms in the easement are given their generally accepted meaning. *Marcus Cable Assocs.*, 90 S.W.3d at 701. "The contracting parties' intentions, as expressed in the

grant, determine the scope of the conveyed easement." *Id.* at 700–01. Unless the language is ambiguous, the court must rely solely on the written instrument. *See Koelsch v. Indus. Gas Supply Corp.*, 132 S.W.3d 494, 498 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). Courts may not "read terms into the four corners of the document that are not there . . . ." *Barrow*, 2007 WL 3293712, at *3.

### 2. Analysis

For purposes of clarity, we note that both parties to this appeal complain of the easement imposed by the trial court in its first amended final judgment. Muniba argues that the imposed easement is too restrictive and that the unambiguous terms of the Declaration provide Parcel 1 with an easement for unrestricted access over, upon, and across the entirety of Parcel 2 for purposes of ingress and egress. While BSG argues in its appeal that the trial court erred in imposing any easement whatsoever across Parcel 2, it also asserts that the trial court did not err in refusing to impose an easement across the entirety of BSG's property.

Paragraph 6 of the Declaration, which constitutes the grant of the easement before us, states as follows:

> Albertson's grants to [Graham] and to all subsequent owners of any portion of Parcel 1, their respective tenants, contractors, employees, agents, customers, licensees and invitees, and the subtenants, contractors, employees, agents, customers, licensees and invitees of such tenants, for the benefit of Parcel 1, a perpetual non-exclusive easement for ingress and egress by vehicular and pedestrian traffic upon, over and across those portions of Parcel 2 which are from time to time developed for ingress and egress for the purpose of providing

31

uninterrupted access from Parcel 1 to Center Street and to Spencer Highway.

According to Muniba, "[t]here was no evidence that the intent of [the] initial grantor and grantee was anything other than to develop the properties for ingress and egress as expressly provided in the initial Declaration of Restrictions," and therefore it should "be permitted to have access over, upon, and across all of the BSG-Spencer Parcel for purposes of ingress and egress." Muniba contends that "the trial court fashioned a new easement more or less out of whole cloth that does not comport with the intent expressed in the actual language of the easement."

BSG asserts that that Muniba's argument contravenes the express language set forth in the grant of the easement. Paragraph 6 of the Declaration grants an easement "upon, over and across *those portions* of Parcel 2 which are *from time to time developed for ingress and egress*" (emphasis added). To find the grant of unrestricted easement Muniba is urging, we would be required to rewrite the terms of the Declaration—e.g., an easement for ingress and egress "upon, over and across Parcel 2" or "upon, over and across all of Parcel 2"—something we cannot do. *See Barrow*, 2007 WL 3293712 at *3; *Marcus Cable Assocs.*, 90 S.W.3d at 700–01 ("The contracting parties' intentions, as expressed in the grant, determine the scope of the conveyed interest."). We conclude that the trial court did not err in refusing to impose an easement for ingress and egress covering the entirety of BSG's property. We overrule Muniba's first cross-issue.

32

## B. Construction of "A Building"

In its second cross-issue, Muniba complains that the trial court erred in interpreting the second amendment to the Declaration as allowing the owner of Parcel 2 to construct an additional building.

Paragraph 2 of the Declaration, executed on June 21, 1994, provided that "(a) [Graham] shall have the right to construct its building anywhere on Parcel 1 subject to the provisions of this Declaration, and (b) Albertson's shall have the right to construct its building(s) anywhere on Parcel 2 subject to the provisions of this Declaration." On December 16, 1994, Albertson's and Williams Industries, Inc. entered into a contract for the construction of an Albertson's store on Parcel 2. Paragraph 3.2 of the construction contract stated that "[t]he Contractor shall achieve Substantial Compliance of the entire Work not later than June 24, 1995." On August 4, 1995, the parties executed a second amendment to the Declaration which amended, among other provisions, paragraph 2 of the Declaration to read, in pertinent part: "The Owner of Parcel 2 may construct a building anywhere on Parcel 2 except within the 'No Build Area' shown on Exhibit A."

In Amended Finding of Fact No. 7, the trial court stated, "The June, 1994 Declaration permitted the construction of 'building(s)' on Parcel 2. No building existed on Parcel 2 on the date of the Declaration. The August, 1995 Second Amendment, dated after the construction of the Alberston's building on Parcel 2,

changed this to 'a building.'" In Finding of Fact No. 18, the court stated that "[t]he term 'a building' in the Second Amendment to the Declaration [] means one additional building. One additional building was built on Parcel 2 after the Second Amendment, Building B, and as such, no more buildings may be built on Parcel 2." In its amended final judgment, the trial court ordered that "the term 'a building' as used in Paragraph 2(b) of the Second Amendment means one additional building" and "that no additional buildings may be built on Parcel 2."

Muniba contends that the change from "building(s)" in Paragraph 2 of the Declaration to "a building" in the second amendment was intended to limit Parcel 2 to one building just as Parcel 1 had been limited to one building in the Declaration. It concludes that because there was no evidence that the Alberston's store had been constructed at the time of the second amendment, there was no basis from which the trial court could have reasonably concluded that the change from "building(s)" to "a building" meant that the original grantor and grantee intended to allow Albertson's to construct one additional building.

Absent any evidence to the contrary, the trial court could have reasonably inferred that Albertson's and Williams Industries, Inc. complied with the terms of their construction contract and completed the store prior to execution of the second amendment. *See Lozano v. Lozano*, 52 S.W.3d 141, 149 (Tex. 2001) (noting that factfinder is entitled to make reasonable inferences from evidence it chooses to

34

believe). Under these circumstances, the trial court could have also reasonably inferred that by amending the language to "a building" after the store was completed, the parties intended to permit Albertson's to construct one more building on Parcel 2 provided that it was not located in the "no build" area. The trial court did not err in interpreting the Declaration to allow BSG to construct the additional building now in existence on Parcel 2. We overrule Muniba's second cross-issue.

## C. Parking in Parcel 2's "No Build" Area

In its third cross-issue, Muniba contends that the trial court erred in finding that tenants and patrons of Parcel 1 could not use the "no build" area of Parcel 2 for parking. It argues that the evidence established that the "no build" area had been used for parking for at least ten years and that the owners of Parcel 2 had waived any violation of the Declaration regarding limitations on parking in the "no build" area.

In Amended Conclusion of Law 19, the trial court stated "[t]he easement across Parcel 2 does not include the right to park on Parcel 2. Muniba's tenants, employees and customers cannot park on Parcel 2." In Amended Finding of Fact No. 8, the court stated, "[t]he "No Build Area" is a part of Parcel 2. Invitees, customers and other patrons of Parcel 1 have been parking in Parcel 2's "No Build Area" since at least November of 2004 when Muniba purchased Parcel 1." In Supplemental Finding of Fact. No. 1, the court stated "Any prior use of Parcel 2's

parking lots and other areas by Muniba, its tenants and its tenants' customers was solely by silent acquiescence of Alberston's and BSG."

Relying on the trial court's findings and conclusions that BSG silently acquiesced to Muniba's prior use of Parcel 2's parking lots, Muniba claims that BSG waived its right to enforce the parking restrictions set out in Paragraph 3 of the Declaration (limiting parking by Muniba, its tenants, and customers to Parcel 1). However, there is a non-waiver provision in the Declaration which precludes Muniba's claim. Paragraph 13 of the Declaration[4] states:

> **Waiver:** The failure of a person to insist upon strict performance of any of the restrictions or other terms and conditions contained herein shall not be deemed a waiver of any rights or remedies that said person may have, and shall not be deemed a waiver of any subsequent breach or default in the performance of any of the restrictions, or other terms and conditions contained herein by the same or any other person.

Absent pleadings and proof that enforcement of a non-waiver provision was itself waived, non-waiver provisions are valid and enforceable. *See A.G.E., Inc. v. Buford*, 105 S.W.3d 667, 676 (Tex. App.—Austin 2003, pet. denied). Muniba did not plead or present evidence that BSG waived enforcement of the non-waiver provision. We conclude that the trial court did not err in finding that tenants and patrons of Parcel 1 could not use the "no build" area of Parcel 2 for parking. *See TX*

---

[4] Neither the first nor the second amendment to the Declaration altered Paragraph 13.

*Far W., Ltd. v. Texas Investments Mgmt., Inc.*, 127 S.W.3d 295, 306 (Tex. App.—Austin 2004, no pet.) Muniba's third cross-issue is overruled.

## Attorney's Fees

In its third issue, BSG asserts that the trial court abused its discretion in awarding attorney's fees to Muniba and in refusing to award any attorney's fees to BSG because BSG should have been determined to be the prevailing party in the litigation rather than Muniba

Paragraph 14 of the Declaration provides that "[i]n the event any person initiates or defends any legal action or proceeding to enforce or interpret any of the terms of this Declaration, the prevailing party in any such action or proceeding shall be entitled to recover from the losing party in any such action or proceeding its reasonable costs and attorney's fees (including its reasonable costs and attorney's fees on appeal)." At trial, the parties presented evidence in support of their claims for attorney's fees. In Amended Finding of Fact 9, the trial court found that Muniba had incurred reasonable and necessary attorney's fees in the amount of $54,800.00 and expenses of $4,567.00 through trial. In Amended Finding of Fact 9, the trial court found that BSG had incurred reasonable and necessary attorney's fees through trial of $39,582.50. In its amended final judgment, the trial court concluded that Muniba was the prevailing party and awarded Muniba its reasonable and necessary attorney's fees and costs and that BSG was not entitled to recover its attorney's fees.

37

When interpreting a contractual attorney's fee provision in which the "prevailing party" term is left undefined, as is the case here, we are to "presume the parties intended the term's ordinary meaning." *Intercont'l Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009). A prevailing party is the party "who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not to the extent of its original contention." *WWW.URBAN.INC. v. Drummond*, 508 S.W.3d 657, 666 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (quoting *Johns v. Ram–Forwarding, Inc.*, 29 S.W.3d 635, 637–38 (Tex. App.—Houston [1st Dist.] 2000, no pet.). Determination of whether a party is the prevailing or successful party is based upon success on the merits, and not on whether damages were awarded. *City of Amarillo v. Glick*, 991 S.W.2d 14, 17 (Tex. App.—Amarillo 1997, pet. denied); *see also Robbins v. Capozzi*, 100 S.W.3d 18, 27 (Tex. App.—Tyler 2002, no pet.). In other words, the prevailing party is the party who is vindicated by the trial court's judgment. *Glick*, 991 S.W.2d at 17; *see also Mohican Oil & Gas, LLC v. Scorpion Expl. & Prod., Inc.*, 337 S.W.3d 310, 322 (Tex. App.—Corpus Christi 2011, pet. denied) ("In short, '[w]hether a party prevails turns on whether the party prevails upon the court to award it something, either monetary or equitable,' and the court then makes such an award." (quoting *Intercont'l Grp. P'ship*, 295 S.W.3d at 655)).

The main issues at trial, as they have been on appeal, were the enforceability of the express easement and the parties' respective breach of contract claims arising from alleged breaches of the Declaration. These claims were the bases for the vast majority of the testimony and evidence presented at trial. In its amended final judgment, the trial court found that the Declaration and its amendments were valid and enforceable contracts and contained a valid and enforceable easement for ingress and egress, and enjoined BSG from, among other things, obstructing the easement tracts or interfering with Muniba's uninterrupted and unobstructed straight line-of-sight access to Parcel 1 from Spencer Highway. Although it found that the parking of vehicles and placement of trash dumpsters on Parcel 2 by Muniba, its tenants, and patrons constituted breaches of the Declaration, it declined to grant BSG's request for injunctive relief. Thus, Muniba was the prevailing party on some of the main issues decided by the trial court.

However, in light of our disposition that the trial court erred with respect to imposition of an immovable straight-line permanent easement and that Muniba's prior material breach of the Declaration precluded it from maintaining its breach of contract claim against BSG, we conclude that both Muniba and BSG are prevailing parties on the main issues in this case. *See Mohican Oil & Gas, LLC*, 337 S.W.3d at 322–23; *Apache Corp.* v. *Dynegy Midstream Servs., Ltd. P'ship*, 214 S.W.3d 554, 566 (Tex. App.—Houston [14th Dist.] 2006), *aff'd in part, rev'd in part on other*

*grounds,* 294 S.W.3d 164 (Tex. 2009). In *Mohican*, a development company and a drilling contractor sued each other over alleged breaches of the same turnkey drilling contract. *See* 337 S.W.3d at 314. One side prevailed on a declaratory judgment theory and the other side won its breach of contract action. *See id.* at 322–23. The court determined that both parties were, therefore, prevailing parties and both were entitled to their attorney's fees. *Id.* Similarly, our disposition of the issues in this complicated case means that both parties have obtained at least some relief on the merits of their respective claims, and that both parties are prevailing parties and are entitled to their attorney's fees.

The trial court made findings of fact regarding Muniba's and BSG's reasonable and necessary attorney's fees and expenses, and neither party is challenging those findings on appeal. We therefore conclude that the trial court properly awarded Muniba $54,800.00 in attorney's fees and $4,567.00 in expenses but that it erred in denying BSG's request for attorney's fees in the amount of $39,582.50. Accordingly, we sustain BSG's third issue in so far as it complains that the trial court erred in denying BSG attorney's fees but overrule in so far as it complains that the trial court erred in awarding attorney's fees to Muniba.

## Conclusion

We affirm the portion of the trial court's judgment awarding Muniba declaratory relief in determining that the Declaration and its amendments created a

40

valid and enforceable easement for ingress and egress. We vacate the portion of the trial court's judgment imposing a straight, unobstructed line-of-sight easement at least twenty-eight (28) feet wide and remand to the trial court for further proceedings. We find that Muniba could not maintain its breach of contract claim against BSG because of Muniba's prior material breach of the Declaration. We therefore order that Muniba take nothing on its breach of contract claim. We affirm the portion of the trial court's judgment awarding $54,800.00 in attorney's fees and $4,567.00 in expenses to Muniba, but we reverse the portion of the judgment denying BSG's request for attorney's fees, and we render judgment that BSG is entitled to recover its reasonable and necessary attorney's fees in the amount of $39,582.50. We affirm the remainder of the trial court's judgment.

Russell Lloyd
Justice

Panel consists of Chief Justice Radack, and Justices Brown and Lloyd.

41

# Exhibit "A"

